# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**     **2. PLEASE TYPE OR PRINT**     **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| Burgious Frazier, Jr., Wayne Krug, Ben Perez, Vanessa Szajnberg, Nicholas Tapalansky, Shelly Yip, Yosub Kim,<br><br>                Petitioners - Appellees,<br>   v.<br>X Corp., formerly known as Twitter, Inc., X Holdings Corp, formerly known as X Holdings I, Inc.,<br><br>              Respondents - Appellants. | S.D.N.Y. | Hon. Jed S. Rakoff |
| | Date the Order or Judgment Appealed from was Entered on the Docket:<br>July 11, 2024 | District Court Docket No.:<br>24-cv-02135 |
| | Date the Notice of Appeal was Filed:<br>July 18, 2024 | Is this a Cross Appeal?<br>☐ Yes  ☑ No |

| Attorney(s) for Appellant(s):<br>☐ Plaintiff<br>☑ Defendant | Counsel's Name:    Address:    Telephone No.:    Fax No.:    E-mail:<br>Michael E. Kenneally<br>Morgan, Lewis & Bockius LLP, 1111 Pennsylvania Avenue, NW, Washington, DC 20004<br>T. 202.739.5893; F. 202.739.3001, michael.kenneally@morganlewis.com<br><br>Melissa D. Hill<br>Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, NY 10178<br>T. 212.309.6318; F. 212.309.6001; melissa.hill@morganlewis.com |
|---|---|
| Attorney(s) for Appellee(s):<br>☑ Plaintiff<br>☐ Defendant | Counsel's Name:    Address:    Telephone No.:    Fax No.:    E-mail:<br>Akiva M. Cohen<br>Kamerman, Uncyk, Soniker & Klein P.C.<br>1700 Broadway, New York, NY 10019<br>T. 212.400.4930<br>acohen@kusklaw.com |

| Has Transcript Been Prepared?<br>No | Approx. Number of Transcript Pages:<br>50 | Number of Exhibits Appended to Transcript:<br>Zero | Has this matter been before this Circuit previously? ☐ Yes ☑ No<br>If Yes, provide the following:<br>Case Name:<br>2d Cir. Docket No.:    Reporter Citation: (i.e., F.3d or Fed. App.) |
|---|---|---|---|

*ADDENDUM "A"*: **COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.**

*ADDENDUM "B"*: **COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.**

### PART A: JURISDICTION

| 1. Federal Jurisdiction | 2. Appellate Jurisdiction |
|---|---|
| ☐ U.S. a party    ☐ Diversity<br>☐ Federal question (U.S. not a party)    ☑ Other (specify): 9 U.S.C. § 4 | ☑ Final Decision    ☐ Order Certified by District Judge (i.e., Fed . R. Civ. P. 54(b))<br>☐ Interlocutory Decision Appealable As of Right    ☑ Other (specify): 9 U.S.C. § 16(a)(3) |

**IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

**FORM C** (Rev. October 2016)

**PART B: DISTRICT COURT DISPOSITION** (Check as many as apply)

**1. Stage of Proceedings**
- [✓] Pre-trial
- [ ] During trial
- [ ] After trial

**2. Type of Judgment/Order Appealed**
- [ ] Default judgment
- [ ] Dismissal/FRCP 12(b)(1) lack of subject matter juris.
- [ ] Dismissal/FRCP 12(b)(6) failure to state a claim
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) frivolous complaint
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) other dismissal
- [ ] Dismissal/other jurisdiction
- [ ] Dismissal/merit
- [✓] Judgment / Decision of the Court
- [ ] Summary judgment
- [ ] Declaratory judgment
- [ ] Jury verdict
- [ ] Judgment NOV
- [ ] Directed verdict
- [ ] Other (specify):

**3. Relief**
- [ ] Damages:
  - [ ] Sought: $_____
  - [ ] Granted: $_____
  - [ ] Denied: $_____
- [✓] Injunctions:
  - [ ] Preliminary
  - [ ] Permanent
  - [ ] Denied

Order compelling arbitration and requiring payment of arbitration fees.

---

**PART C: NATURE OF SUIT** (Check as many as apply)

**1. Federal Statutes**
- [ ] Antitrust
- [ ] Bankruptcy
- [ ] Banks/Banking
- [ ] Civil Rights
- [ ] Commerce
- [ ] Energy
- [ ] Commodities
- [ ] Other (specify): _____
- [ ] Communications
- [ ] Consumer Protection
- [ ] Copyright □ Patent
- [ ] Trademark
- [ ] Election
- [ ] Soc. Security
- [ ] Environmental
- [ ] Freedom of Information Act
- [ ] Immigration
- [ ] Labor
- [ ] OSHA
- [ ] Securities
- [ ] Tax

**2. Torts**
- [ ] Admiralty/ Maritime
- [ ] Assault / Defamation
- [ ] FELA
- [ ] Products Liability
- [ ] Other (Specify):

**3. Contracts**
- [ ] Admiralty/ Maritime
- [ ] Arbitration
- [ ] Commercial
- [ ] Employment
- [ ] Insurance
- [ ] Negotiable Instruments
- [ ] Other Specify

**4. Prisoner Petitions**
- [ ] Civil Rights
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Parole
- [ ] Vacate Sentence
- [ ] Other

**5. Other**
- [ ] Hague Int'l Child Custody Conv.
- [ ] Forfeiture/Penalty
- [ ] Real Property
- [ ] Treaty (specify): _____
- [ ] Other (specify): _____

**6. General**
- [✓] Arbitration
- [ ] Attorney Disqualification
- [ ] Class Action
- [ ] Counsel Fees
- [ ] Shareholder Derivative
- [ ] Transfer

**7.** Will appeal raise constitutional issue(s)?
- [ ] Yes [✓] No

Will appeal raise a matter of first impression?
- [✓] Yes [ ] No

---

1. Is any matter relative to this appeal still pending below? [ ] Yes, specify: _____ [✓] No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

   (A) Arises from substantially the same case or controversy as this appeal? [ ] Yes [✓] No

   (B) Involves an issue that is substantially similar or related to an issue in this appeal? [✓] Yes [ ] No

If yes, state whether □ "A," or □ "B," or □ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: Ma v. Twitter, Inc. | Docket No. 23-cv-3301 | Citation: n/a | Court or Agency: N.D. Cal. |
|---|---|---|---|

Name of Appellant: n/a

| Date: August 1, 2024 | Signature of Counsel of Record: /s/ Melissa D. Hill |
|---|---|

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C** (Rev. December 2016)

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

## ADDENDUM "A"

## I.  NATURE OF THE ACTION

This appeal arises from a proceeding under 9 U.S.C. § 4 of the Federal Arbitration Act, in which petitioners sought an order compelling respondents to pay ongoing arbitration fees in their individual arbitrations.

## II.  THE RESULT BELOW

The district court (Rakoff, J.) granted the petition to compel arbitration and ordered Twitter to pay all ongoing arbitration fees for petitioners' claims unless and until the individual arbitrator in each of petitioners' respective arbitration rules that Twitter is not obligated to do so.

## III.  NOTICE OF APPEAL AND DOCKET SHEET

On July 18, 2024, Respondents X Corp., formerly known as Twitter, Inc., and X Holdings Corp., formerly known as X Holdings I, Inc. filed a notice of appeal without selecting an order for appeal in the electronic submission. Dkt. 28. On the same day, the district court issued a notice stating that the filing was deficient because it did not select the order/judgment being appealed. Respondents then filed another notice of appeal that day, selecting docket entry #27 as the opinion and order on appeal. Dkt. 29. The notice of appeal (dkt. 28), amended notice of appeal (dkt. 29), and district court docket sheet are attached as Exhibits A, B, and C, respectively.

## IV.  COPIES OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR APPEAL

The opinion and order, entered July 11, 2024 (dkt. 27), is attached as Exhibit D.

# Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| BURGIOUS FRAZIER, JR., YOSUB KIM, WAYNE KRUG, BEN PEREZ, VANESSA SZAJNBERG, NICHOLAS TAPALANSKY, and SHELLY YIP,<br><br>                          Petitioners,<br><br>      -against-<br>X CORP f/k/a TWITTER, INC. and X HOLDINGS CORP f/k/a X HOLDINGS I, INC.,<br><br>                        Respondents. | Case No. 24-cv-02135 |

## NOTICE OF APPEAL

Notice is given that Respondents X Corp., formerly known as Twitter, Inc., and X Holdings Corp., formerly known as X Holdings I, Inc. (collectively "Twitter"), hereby appeal to the United States Court of Appeals for the Second Circuit from the Opinion and Order entered July 11, 2024, granting the Petitioners' Motion to Compel Arbitration. Dkt. No. 72. A copy of the Opinion and Order is attached hereto as Exhibit A.

Dated: July 18, 2024

Respectfully submitted,

*/s/ Melissa Hill*
Melissa Hill
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Tel: 212.309.6000
Fax: 212.309.6001
Melissa.Hill@morganlewis.com

*Attorneys for Respondents*

1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was filed electronically and served on all counsel of record on July 18, 2024 via the Court's ECF/CM system.

*/s/ Melissa Hill*
Melissa Hill

# Exhibit B

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BURGIOUS FRAZIER, JR., YOSUB KIM, WAYNE KRUG, BEN PEREZ, VANESSA SZAJNBERG, NICHOLAS TAPALANSKY, and SHELLY YIP, <br><br>                      Petitioners, <br><br>      -against- <br> X CORP f/k/a TWITTER, INC. and X HOLDINGS CORP f/k/a X HOLDINGS I, INC., <br><br>                      Respondents. | Case No. 24-cv-02135 |

### NOTICE OF APPEAL

Notice is given that Respondents X Corp., formerly known as Twitter, Inc., and X Holdings Corp., formerly known as X Holdings I, Inc. (collectively "Twitter"), hereby appeal to the United States Court of Appeals for the Second Circuit from the Opinion and Order entered July 11, 2024, granting the Petitioners' Motion to Compel Arbitration.  Dkt. No. 72.  A copy of the Opinion and Order is attached hereto as Exhibit A.

Dated: July 18, 2024

                                  Respectfully submitted,

                                  */s/ Melissa Hill*
                                  Melissa Hill
                                  MORGAN, LEWIS & BOCKIUS LLP
                                  101 Park Avenue
                                  New York, NY 10178-0060
                                  Tel: 212.309.6000
                                  Fax: 212.309.6001
                                  Melissa.Hill@morganlewis.com

                                  *Attorneys for Respondents*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing was filed electronically and served on all counsel of record on July 18, 2024 via the Court's ECF/CM system.

*/s/ Melissa Hill*
Melissa Hill

# Exhibit C

APPEAL,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
### CIVIL DOCKET FOR CASE #: 1:24−cv−02135−JSR

| | |
|---|---|
| Frazier, Jr. et al v. X Corp et al | Date Filed: 03/21/2024 |
| Assigned to: Judge Jed S. Rakoff | Jury Demand: None |
| Cause: 09:4 Petition to order arbitration; failure to arbitrate | Nature of Suit: 896 Other Statutes: Arbitration |
| | Jurisdiction: Federal Question |

**Petitioner**

**Burgious Frazier, Jr.**      represented by      **Michael Dunford**
68 Reasoner Pl
Honolulu, HI 96819
808−778−4081
Email: mdunford@kusklaw.com
*ATTORNEY TO BE NOTICED*

**Akiva Meir Cohen**
Kamerman, Uncyk, Soniker & Klein P.C.
1700 Broadway, 16th Floor
New York, NY 10019
917−742−6193
Fax: 866−221−6122
Email: acohen@kusklaw.com
*ATTORNEY TO BE NOTICED*

**Petitioner**

**Yosub Kim**      represented by      **Michael Dunford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Akiva Meir Cohen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Petitioner**

**Wayne Krug**      represented by      **Michael Dunford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Akiva Meir Cohen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Petitioner**

**Ben Perez**      represented by      **Michael Dunford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Akiva Meir Cohen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Petitioner**

**Vanessa Szajnberg**      represented by      **Michael Dunford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Akiva Meir Cohen**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Petitioner**

**Nicholas Tapalansky**                     represented by   **Michael Dunford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Akiva Meir Cohen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Petitioner**

**Shelly Yip**                              represented by   **Michael Dunford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Akiva Meir Cohen**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**X Corp**                                  represented by   **Kaitlyn Whiteside**
*formerly known as*                                          101 Park Avenue
Twitter, Inc.                                                37th Floor
New York, NY 10178
423−316−7305
Email: kaitlyn.whiteside@morganlewis.com
*ATTORNEY TO BE NOTICED*

**Melissa D Hill**
Morgan, Lewis & Bockius LLP (New
York)
101 Park Avenue
New York, NY 10178
(212)−309−6318
Fax: (212)−309−6001
Email: melissa.hill@morganlewis.com
*ATTORNEY TO BE NOTICED*

**Michael E Kenneally**
Morgan, Lewis & Bockius LLP − DC
Office
1111 Pennsylvania Avenue, NW
Washington, DC 20004−2541
202−739−5893
Email: michael.kenneally@morganlewis.com
*ATTORNEY TO BE NOTICED*

**Respondent**

**X Holdings Corp**                         represented by   **Melissa D Hill**
*formerly known as*                                          (See above for address)
X Holdings I, Inc.                                           *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kaitlyn Whiteside**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael E Kenneally**

(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/21/2024 | 1 | **FILING ERROR − DEFICIENT PLEADING − PDF ERROR −** PETITION TO COMPEL ARBITRATION. (Filing Fee $ 405.00, Receipt Number ANYSDC−29115046).Document filed by Nicholas Tapalansky, Wayne Krug, Shelly Yip, Yosub Kim, Burgious Frazier, Ben Perez, Vanessa Szajnberg. (Attachments: # 1 Exhibit Exhibit 1 − Motion for an Interim Award, # 2 Exhibit Exhibit 2 − Twitter − Opposition to Zhang's Motion for Interim Award 8.31.23, # 3 Exhibit Exhibit 3 − CORRECTED Reply re Motion for an Interim Award, # 4 Exhibit Exhibit 4 − 11.30.23 Partial Final Award, # 5 Exhibit Exhibit 5 − Frazier Burgious JAMS Submission_Redacted, # 6 Exhibit Exhibit 6 − Kim Yosub JAMS Submission_Redacted, # 7 Exhibit Exhibit 7 − Krug Wayne JAMS Submission_Redacted, # 8 Exhibit Exhibit 8 − Perez Ben JAMS Submission_Redacted, # 9 Exhibit Exhibit 9 − Szajnberg Vanessa JAMS Submission_Redacted, # 10 Exhibit Exhibit 10 − Tapalansky Nicholas JAMS Submission_Redacted, # 11 Exhibit Exhibit 11 − Yip Shelly JAMS Submission_Redacted).(Cohen, Akiva) Modified on 3/22/2024 (pc). (Entered: 03/21/2024) |
| 03/21/2024 | 2 | **FILING ERROR − PDF ERROR −** CIVIL COVER SHEET filed..(Cohen, Akiva) Modified on 3/22/2024 (pc). (Entered: 03/21/2024) |
| 03/21/2024 | 3 | MOTION to Compel Arbitration . Document filed by Burgious Frazier, Yosub Kim, Wayne Krug, Ben Perez, Vanessa Szajnberg, Nicholas Tapalansky, Shelly Yip..(Cohen, Akiva) (Entered: 03/21/2024) |
| 03/21/2024 | 4 | MEMORANDUM OF LAW in Support re: 3 MOTION to Compel Arbitration . . Document filed by Burgious Frazier, Yosub Kim, Wayne Krug, Ben Perez, Vanessa Szajnberg, Nicholas Tapalansky, Shelly Yip..(Cohen, Akiva) (Entered: 03/21/2024) |
| 03/21/2024 | 5 | DECLARATION of Akiva M. Cohen in Support re: 3 MOTION to Compel Arbitration .. Document filed by Burgious Frazier, Yosub Kim, Wayne Krug, Ben Perez, Vanessa Szajnberg, Nicholas Tapalansky, Shelly Yip. (Attachments: # 1 Exhibit Exhibit 1 − Declaration of Fidelma Callaghan, # 2 Exhibit Exhibit 2 − Twitter, Inc.'s Request for Fee Sharing 6.2.23, # 3 Exhibit Exhibit 3 − JAMS Letter to Twitter 06.21.23, # 4 Exhibit Exhibit 4 − Twitter Response to JAMS 06.21.23 Letter, # 5 Exhibit Exhibit 5 − Email from Sari Alamuddin Dated 03.6.24).(Cohen, Akiva) (Entered: 03/21/2024) |
| 03/22/2024 | | **\*\*\*NOTICE TO ATTORNEY REGARDING CIVIL. CASE OPENING STATISTICAL ERROR CORRECTION: Notice to attorney Akiva Meir Cohen. The following case opening statistical information was erroneously selected/entered: Dollar Demand 0; Arbitration code m (Mandatory); County code New York; Fee Status code due (due);. The following correction(s) have been made to your case entry: the Dollar Demand has been modified to blank; the Arbitration code has been deleted; the County code has been modified to Onondaga; the Fee Status code has been modified to pd (paid);. (pc)** (Entered: 03/22/2024) |
| 03/22/2024 | | **\*\*\*NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Akiva Meir Cohen. The party information for the following party/parties has been modified: X Corp f/k/a Twitter, Inc, X Holdings Corp f/k/a X Holdings I, INC., Burgious Frazier. The information for the party/parties has been modified for the following reason/reasons: party name contained a typographical error; alias party name was omitted;. (pc)** (Entered: 03/22/2024) |
| 03/22/2024 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT CIVIL COVER SHEET. Notice to attorney Akiva Meir Cohen to RE−FILE Document No. 2 Civil Cover Sheet. The filing is deficient for the following reason(s): Multiple Jurisdictions were selected, choose one. Re−file the document using the event type Civil Cover Sheet found under the event list Other Documents and attach the correct PDF. (pc)** (Entered: 03/22/2024) |

| | | |
|---|---|---|
| 03/22/2024 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Akiva Meir Cohen to RE−FILE Document No. 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration,,,. The filing is deficient for the following reason(s): the PDF attached to the docket entry for the pleading is not correct; the wrong event type was used to file the pleading; Remove the Notice of Petition as the first page. Re−file the pleading using the event type Petition Other found under the event list Complaints and Other Initiating Documents − attach the correct signed PDF − select the individually named filer/filers − select the individually named party/parties the pleading is against. If the deficiency/deficiencies are not corrected within five (5) days per Amended Standing Order 15−mc−00131 this case will be administratively closed. Initial Pleading due by 3/27/2024. (pc)** (Entered: 03/22/2024) |
| 03/22/2024 | 6 | PETITION TO COMPEL..Document filed by Nicholas Tapalansky, Wayne Krug, Shelly Yip, Yosub Kim, Burgious Frazier, Jr., Ben Perez, Vanessa Szajnberg. (Attachments: # 1 Exhibit Exhibit 1 − Motion for an Interim Award, # 2 Exhibit Exhibit 2 − Twitter − Opposition to Zhang's Motion for Interim Award 8.31.23, # 3 Exhibit Exhibit 3 − CORRECTED Reply re Motion for an Interim Award, # 4 Exhibit Exhibit 4 − 11.30.23 Partial Final Award, # 5 Exhibit Exhibit 5 − Frazier Burgious JAMS Submission_Redacted, # 6 Exhibit Exhibit 6 − Kim Yosub JAMS Submission_Redacted, # 7 Exhibit Exhibit 7 − Krug Wayne JAMS Submission_Redacted, # 8 Exhibit Exhibit 8 − Perez Ben JAMS Submission_Redacted, # 9 Exhibit Exhibit 9 − Szajnberg Vanessa JAMS Submission_Redacted, # 10 Exhibit Exhibit 10 − Tapalansky Nicholas JAMS Submission_Redacted, # 11 Exhibit Exhibit 11 − Yip Shelly JAMS Submission_Redacted).(Cohen, Akiva) (Entered: 03/22/2024) |
| 03/22/2024 | 7 | CIVIL COVER SHEET filed..(Cohen, Akiva) (Entered: 03/22/2024) |
| 03/22/2024 | 8 | **FILING ERROR − DEFICIENT PLEADING − SUMMONS REQUEST PDF ERROR −** REQUEST FOR ISSUANCE OF SUMMONS as to X. CORP f/k/a TWITTER, INC. and X HOLDINGS CORP f/k/a X HOLDINGS I, INC.., re: 6 Petition (Other),,,. Document filed by Burgious Frazier, Jr., Yosub Kim, Wayne Krug, Ben Perez, Vanessa Szajnberg, Nicholas Tapalansky, Shelly Yip..(Cohen, Akiva) Modified on 3/25/2024 (pc). (Entered: 03/22/2024) |
| 03/25/2024 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above−entitled action is assigned to Judge Jed S. Rakoff. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district−judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf−related−instructions..(pc) (Entered: 03/25/2024) |
| 03/25/2024 | | Magistrate Judge Robert W. Lehrburger is designated to handle matters that may be referred in this case. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018−06/AO−3.pdf. (pc) (Entered: 03/25/2024) |
| 03/25/2024 | | Case Designated ECF. (pc) (Entered: 03/25/2024) |
| 03/25/2024 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney Akiva Meir Cohen to RE−FILE Document No. 8 Request for Issuance of Summons,. The filing is deficient for the following reason(s): the PDF attached to the docket entry for the issuance of summons is not correct; defendant name does not exactly match complaint caption title;. Re−file the document using the event type Request for Issuance of Summons found under the event list Service of Process − select the correct filer/filers − and attach the correct summons form PDF. (pc)** (Entered: 03/25/2024) |
| 03/25/2024 | 9 | REQUEST FOR ISSUANCE OF SUMMONS as to X. CORP f/k/a TWITTER, INC. and X HOLDINGS CORP f/k/a X HOLDINGS I, INC.,, re: 6 Petition (Other),,,. Document filed by Burgious Frazier, Jr., Yosub Kim, Wayne Krug, Ben Perez, Vanessa Szajnberg, Nicholas Tapalansky, Shelly Yip..(Cohen, Akiva) (Entered: 03/25/2024) |

| | | |
|---|---|---|
| 03/26/2024 | 10 | ELECTRONIC SUMMONS ISSUED as to X Corp, X Holdings Corp. (vf) (Entered: 03/26/2024) |
| 03/28/2024 | 11 | AFFIDAVIT OF SERVICE of Notice of Petition, Petition to Compel with Exhibits 1−11, Memorandum of Law in Support of Petition to Compel, Declaration of Akiva M. Cohen with Exhibits 1−5 served on X. CORP f/k/a TWITTER, INC. and X HOLDINGS CORP f/k/a X HOLDINGS I, INC. on 03/21/2024. Service was accepted by Kaiser H. Chowdhry. Document filed by Burgious Frazier, Jr., Yosub Kim, Wayne Krug, Ben Perez, Vanessa Szajnberg, Nicholas Tapalansky, Shelly Yip..(Cohen, Akiva) (Entered: 03/28/2024) |
| 03/29/2024 | 12 | PROPOSED STIPULATION AND ORDER. Document filed by Burgious Frazier, Jr., Yosub Kim, Wayne Krug, Ben Perez, Vanessa Szajnberg, Nicholas Tapalansky, Shelly Yip..(Cohen, Akiva) (Entered: 03/29/2024) |
| 04/26/2024 | 13 | RESPONSE in Opposition to Motion re: 3 MOTION to Compel Arbitration . . Document filed by X Corp, X Holdings Corp. (Attachments: # 1 Affidavit of Eric Meckley, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4).(Hill, Melissa) (Entered: 04/26/2024) |
| 05/08/2024 | 14 | NOTICE OF COURT CONFERENCE: The dial in information will be 888−363−4735, access code 1086415. (and as further set forth herein.) SO ORDERED. Initial Conference set for 5/23/2024 at 11:30 AM before Judge Jed S. Rakoff. (Signed by Judge Jed S. Rakoff on 5/8/2024) (jca) (Entered: 05/08/2024) |
| 05/09/2024 | 15 | REPLY MEMORANDUM OF LAW in Support re: 3 MOTION to Compel Arbitration . . Document filed by Burgious Frazier, Jr., Yosub Kim, Wayne Krug, Ben Perez, Vanessa Szajnberg, Nicholas Tapalansky, Shelly Yip. (Attachments: # 1 Affidavit Reply Declaration of Akiva Cohen, # 2 Exhibit Exhibit 1 − Declaration of Lauren Wegman, D.I. 14 in Woodfield v. Twitter, # 3 Exhibit Exhibit 2 − Twitter Offer Letter − Burgious Frazier − signed, # 4 Exhibit Exhibit 3 − Defendants Motion to Compel Arbitration, D.I. 12 in Woodfield v. Twitter, # 5 Exhibit Exhibit 4 − Respondents Opposition to Petitioners Motion in Ma).(Cohen, Akiva) (Entered: 05/09/2024) |
| 05/10/2024 | 16 | NOTICE OF APPEARANCE by Melissa D Hill on behalf of X Corp..(Hill, Melissa) (Entered: 05/10/2024) |
| 05/14/2024 | 17 | NOTICE OF APPEARANCE by Melissa D Hill on behalf of X Corp, X Holdings Corp..(Hill, Melissa) (Entered: 05/14/2024) |
| 05/14/2024 | 18 | MOTION for Michael E. Kenneally to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC−29349942. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by X Corp, X Holdings Corp. (Attachments: # 1 Exhibit Exhibit A−DC Bar Certificate of Good Standing, # 2 Exhibit Exhibit B−MA Certificate of Good Standing, # 3 Exhibit Exhibit C−Proposed Order, # 4 Exhibit Exhibit D−Hill Declaration in Support of Motion for Admission Pro Hac Vice).(Hill, Melissa) (Entered: 05/14/2024) |
| 05/14/2024 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 18 MOTION for Michael E. Kenneally to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC−29349942. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (sgz)** (Entered: 05/14/2024) |
| 05/14/2024 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: Telephone Conference held on 5/14/2024, without transcription or recording during which counsel for all parties was present. The Court granted petitioner permission to serve a motion for sanctions on respondents in accordance with Federal Rule of Civil Procedure 11. The Court will set a briefing schedule on any potential motion for sanctions during the IPC scheduled for May 23.. (Kotowski, Linda) (Entered: 05/14/2024) |
| 05/16/2024 | 19 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent X Holdings Corp. for X Corp. Document filed by X Corp, X Holdings Corp..(Hill, Melissa) (Entered: 05/16/2024) |
| 05/17/2024 | 20 | ORDER FOR ADMISSION PRO HAC VICE granting 18 Motion for Michael E. Kenneally to Appear Pro Hac Vice. IT IS HEREBY ORDERED that Applicant is admitted to practice pro hac vice in the above captioned case in the United States |

| | | |
|---|---|---|
| | | District Court for the Southern District of New York. All attorneys appearing before this Court are subject to the Local Rules of this Court, including the Rules governing discipline of attorneys. (Signed by Judge Jed S. Rakoff on 5/17/2024) (mml) (Entered: 05/17/2024) |
| 05/23/2024 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: ( Oral Argument set for 6/13/2024 at 04:00 PM before Judge Jed S. Rakoff.)in courtroom 14B of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street New York City, New York.. (Kotowski, Linda) (Entered: 05/23/2024) |
| 05/28/2024 | 21 | MOTION for Michael D. Dunford to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC−29406781. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Burgious Frazier, Jr., Yosub Kim, Wayne Krug, Ben Perez, Vanessa Szajnberg, Nicholas Tapalansky, Shelly Yip. (Attachments: # 1 Exhibit Exhibit A − Mike Dunford Certificate of Good Standing 2024.05.20, # 2 Exhibit Exhibit B − Proposed Order, # 3 Exhibit Exhibit C − Declaration of Michael D. Dunford in Support of Motion for Admission Pro Hac Vice).(Cohen, Akiva) (Entered: 05/28/2024) |
| 05/28/2024 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 21 MOTION for Michael D. Dunford to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC−29406781. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (rju)** (Entered: 05/28/2024) |
| 05/28/2024 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: Telephone Conference held on 5/28/2024,without transcription or recording during which counsel for all parties was present. The Court adjourned the oral argument on petitioners motion to compel arbitration currently scheduled for June 13, 2024, which will now take place on June 14, 2024 at 4 PM in Courtroom 14B. Upon consent of the parties, Court set the following briefing schedule for petitioners motion for sanctions: petitioners moving papers shall be filed by no later than June 7, 2024; respondents answering papers shall be filed by no later than July 5, 2024; and petitioners reply shall be filed by no later than July 15, 2024. No oral argument on petitioners motion for sanctions is anticipated at this time. ( Oral Argument set for 6/14/2024 at 04:00 PM before Judge Jed S. Rakoff.). (Kotowski, Linda) (Entered: 05/31/2024) |
| 05/30/2024 | 22 | AMENDED OPPOSITION BRIEF re: 13 Response in Opposition to Motion, *Petition to Compel Arbitration*. Document filed by X Corp, X Holdings Corp..(Hill, Melissa) (Entered: 05/30/2024) |
| 05/31/2024 | 23 | ORDER FOR ADMISSION PRO HAC VICE granting 21 Motion for Michael D. Dunford to Appear Pro Hac Vice. (Signed by Judge Jed S. Rakoff on 5/31/2024) (vfr) (Entered: 05/31/2024) |
| 06/07/2024 | 24 | NOTICE OF APPEARANCE by Michael Dunford on behalf of Burgious Frazier, Jr., Yosub Kim, Wayne Krug, Ben Perez, Vanessa Szajnberg, Nicholas Tapalansky, Shelly Yip..(Dunford, Michael) (Entered: 06/07/2024) |
| 06/12/2024 | 25 | NOTICE OF APPEARANCE by Kaitlyn Whiteside on behalf of X Corp, X Holdings Corp..(Whiteside, Kaitlyn) (Entered: 06/12/2024) |
| 06/14/2024 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: Oral Argument held on 6/14/2024 re: 3 MOTION to Compel Arbitration . filed by Nicholas Tapalansky, Wayne Krug, Yosub Kim, Vanessa Szajnberg, Shelly Yip, Burgious Frazier, Jr., Ben Perez. (Kotowski, Linda) (Entered: 06/20/2024) |
| 06/17/2024 | 26 | NOTICE OF APPEARANCE by Michael E Kenneally on behalf of X Corp, X Holdings Corp..(Kenneally, Michael) (Entered: 06/17/2024) |
| 07/11/2024 | 27 | OPINION AND ORDER re: 3 MOTION to Compel Arbitration . filed by Nicholas Tapalansky, Wayne Krug, Yosub Kim, Vanessa Szajnberg, Shelly Yip, Burgious Frazier, Jr., Ben Perez. For the foregoing reasons, the Court grants the motion to compel arbitration and orders Twitter to pay all ongoing arbitration fees for petitioners' claims unless and until the individual arbitrator in each of petitioners' respective arbitrations rules to the contrary. SO ORDERED. (Signed by Judge Jed S. Rakoff on 7/11/2024) (ks) Transmission to Orders and Judgments Clerk for processing. (Entered: |

| | | 07/12/2024) |
|---|---|---|
| 07/18/2024 | 28 | **FILING ERROR − NO ORDER SELECTED FOR APPEAL** − NOTICE OF APPEAL. Document filed by X Corp, X Holdings Corp. Filing fee $ 605.00, receipt number ANYSDC−29622850. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Attachments: # 1 Exhibit A − 7.11.2024 Opinion and Order).(Hill, Melissa) Modified on 7/18/2024 (nd). (Entered: 07/18/2024) |
| 07/18/2024 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT APPEAL. Notice to attorney Melissa Hill to RE−FILE Document No. 28 Notice of Appeal,.. The filing is deficient for the following reason(s): the order/judgment being appealed was not selected;. Re−file the appeal using the event type Notice of Appeal found under the event list Appeal Documents − attach the correct signed PDF − select the correct named filer/filers − select the correct order/judgment being appealed. (nd) (Entered: 07/18/2024) |
| 07/18/2024 | 29 | NOTICE OF APPEAL from 27 Memorandum & Opinion,,.. Document filed by X Corp, X Holdings Corp. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Attachments: # 1 Exhibit A − 7.11.2024 Opinion and Order).(Hill, Melissa) Modified on 7/18/2024 (nd). (Entered: 07/18/2024) |
| 07/18/2024 | | Appeal Fee Paid electronically via Pay.gov: for 29 Notice of Appeal,. Filing fee $ 605.00. Pay.gov receipt number ANYSDC−29622850, paid on 7/18/2024..(nd) (Entered: 07/18/2024) |
| 07/18/2024 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 29 Notice of Appeal,..(nd) (Entered: 07/18/2024) |
| 07/18/2024 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 29 Notice of Appeal, filed by X Corp, X Holdings Corp were transmitted to the U.S. Court of Appeals..(nd) (Entered: 07/18/2024) |

# Exhibit D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BURGIOUS FRAZIER, JR., YOSUB KIM, WAYNE KRUG, BEN PEREZ, VANESSA SZAJNBERG, NICHOLAS TAPALANSKY, and SHELLY YIP,<br><br>          Petitioners,<br><br>  -against-<br><br>X CORP f/k/a TWITTER, INC. and X HOLDINGS CORP f/k/a X HOLDINGS I, INC.,<br><br>          Respondents. | 24-cv-02135(JSR)<br><br>OPINION AND ORDER |

JED S. RAKOFF, U.S.D.J.:

Petitioners Burgious Frazier, Jr., Yosub Kim, Wayne Krug, Ben Perez, Vanessa Szajnberg, Nicholas Tapalansky, and Shelly Yip are former employees of respondents Twitter, Inc., X Corp., X Holdings I, Inc., and X Holding Corp. (collectively "Twitter"). Twitter and petitioners agreed at the commencement of petitioners' employment to arbitrate petitioners' employment-related claims against Twitter in accordance with Twitter's Dispute Resolution Agreement ("DRA"). After Twitter terminated petitioners' employment, petitioners initiated individual arbitrations with the Judicial Arbitration and Mediations Services ("JAMS"), alleging Twitter had not paid the full severance that petitioners were owed. JAMS then promptly informed Twitter that pursuant to JAMS' rules, Twitter would be required to pay all ongoing arbitration fees. Twitter initially participated in the arbitrations but then objected to paying all ongoing fees on the ground that JAMS'

rules did not apply or that, at a minimum, whether or not they applied had to be determined by the individual arbitrators in each of the individual cases. Rejecting this objection, the General Counsel of JAMS directed Twitter to pay, but Twitter refused, claiming that only the individual arbitrators in individual cases could force Twitter to pay, and the arbitrations ground to a halt.

Petitioners now seek an order compelling Twitter to pay all ongoing fees for their arbitrations at least until the individual arbitrators in the individual cases have been given the opportunity to rule on the question. For the reasons set forth below, the Court grants petitioners' motion to compel and orders Twitter to pay all ongoing arbitration fees for petitioners' claims unless and until the individual arbitrator in each of petitioners' respective arbitrations rules to the contrary.

I.    <u>Background</u>

Petitioners are former Twitter employees who were recently laid off by the company. Petitioners allege that they were each offered less severance than Twitter was contractually obligated to provide. *See* Pet. Br. (Dkt. 4) at 5. Instead of accepting the proffered severance packages, petitioners each filed individual arbitration claims against Twitter. *Id.*

As a condition to originally accepting employment with Twitter, each of the petitioners was required to sign an arbitration agreement, the DRA, which committed both parties to arbitrate "without limitation,

disputes arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement." DRA (Dkt. 6-11) § 1.[1] The DRA also incorporated JAMS Employment Arbitration Rules and Procedures (the "JAMS Rules") by reference, specifying that those rules would govern any arbitration that might be filed. *See* DRA (Dkt. 6-11) § 5 ("Employee and the Company agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ('JAMS'), pursuant to the then-current JAMS Rules."); *see also id.* § 3 ("[T]he dispute shall be heard by a neutral arbitrator chosen according to the procedures found in the then-current JAMS Employment Arbitration Rules and Procedures ('JAMS Rules')."). The DRA also specified that any arbitration would be brought "**on an individual basis only, and not on a class, collective, or private attorney general representative action basis.**" *Id.* § 5 (emphasis in original).

After petitioners filed their individual cases with JAMS, JAMS invoiced Twitter for its share of the arbitration initiation fees and indicated that JAMS' Policy on Employment Arbitration Minimum Standards of Procedural Fairness (the "Minimum Standards") would apply to each arbitration governed by the DRA. Pet. Br. (Dkt. 4) at 5. The Minimum Standards, if applicable, would require Twitter, as the employer, to pay all ongoing fees associated with the arbitration. *See*

---

[1]   Each petitioner was required to sign a copy of the DRA that was substantively identical. *See* Pet. Br. (Dkt. 4) at 10. All citations to the DRA are made to the copy in Dkt. 6-11.

Minimum Standards No. 6, https://www.jamsadr.com/employment-minimum-standards/ ("The only fee that an employee may be required to pay is JAMS' initial Case Management Fee. All other costs must be borne by the company, including any additional JAMS Case Management Fees and all professional fees for the arbitrator's services."). By their terms, the Minimum Standards "apply to arbitrations based on pre-dispute agreements that are required as a condition of employment." Minimum Standards, at 1. JAMS Rule 31(c) contains a substantively identical requirement where arbitration is based on a pre-dispute agreement that is a condition of employment. *See* JAMS Rule 31(c), https://www.jamsadr.com/rules-employment-arbitration/english ("If an Arbitration is based on a clause or agreement that is required as a condition of employment, the only fee that an Employee may be required to pay is the initial JAMS Case Management Fee.").

At the time the arbitrations were initiated, Twitter did not object to JAMS' statement that the Minimum Standards would apply. Cohen Decl. (Dkt. 5) ¶ 3. Instead, Twitter filed its answers and affirmative defenses to petitioners' claims, paid its portion of the case initiation fees, and began participating in the selection of arbitrators. *Id.* Several months after the arbitration commenced, however, Twitter requested that ongoing arbitration fees be evenly split between Twitter and each claimant, arguing that the Minimum Standards and JAMS Rule 31(c) were inapplicable and that, in any event, the DRA provided for even fee splitting, superseding (or at least

conflicting with) the Minimum Standards. *See* Petition (Dkt. 6) ¶¶ 44-46; Cohen Dec. Ex. 2 (Dkt. 5-2).

Twitter based this request on a provision of the DRA which states, "[i]f under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator." DRA (Dkt. 6-11) § 6. Twitter took the position that this clause requires petitioners to pay for half of ongoing arbitration fees based on the word "apportioned." Cohen Dec. Ex. 2 (Dkt. 5-2), at 1-2. Twitter further claimed that the Minimum Standards and JAMS Rule 31(c) did not apply in any event, because the DRA specified that "[y]ou can choose to opt out of this Agreement -- you have 30 days to opt out," and further stated that "**[a]rbitration is not a mandatory condition of Employee's employment at the Company**." DRA (Dkt. 6-11), at p.1 & § 8 (emphasis in original). Because petitioners could choose to opt out of arbitration, respondents argued, the arbitration provision was not a "condition of employment." JAMS Rule 31(c).

JAMS' General Counsel rejected both arguments in a formal letter to the parties and stated that the Minimum Standards would apply to each arbitration proceeding. *See* Cohen Decl. Ex. 3 (Dkt. 5-3). Thus, Twitter would have to pay all ongoing fees. Twitter wrote JAMS and indicated that they would refuse to proceed under the Minimum Standards, asserting that only each claimant's individual arbitrator could answer questions regarding the interpretation of the DRA. *See*

Cohen Dec. Ex. 4 (Dkt. 5-4). To support this latter argument, Twitter's referred back to its prior letter, which cited the DRA's requirement that disputes about arbitration fees "be resolved by the Arbitrator." DRA (Dkt. 6-11) § 6; *see* Cohen Decl. Ex. 2 (Dkt. 5-2) at 1-2.

This refusal to pay halted the progress of each of petitioners' ongoing arbitrations. To break this impasse, petitioners' counsel advanced half of the ongoing fees in the case of another former Twitter employee they represented, Zhang Yunfeng, to get an individual arbitrator's ruling on the matter. *See* Pet. Br. (Dkt. 4) at 6. The arbitrator, retired Magistrate Judge Frank Maas, found that "[t]he DRA, which contains mandatory arbitration language in Section 1, . . . constitutes 'an agreement . . . required as a condition of employment' within the meaning of JAMS Rule 31(c)." Pet. Ex. 4 (Dkt. 4) at 3-4. Thus, Judge Maas found the Minimum Standards were applicable to the DRA and Twitter was "required to pay all the JAMS fees and arbitrator fees (other than the initial case management fee) incurred in connection with this proceeding." *Id.*

Despite this ruling, Twitter refused to pay the arbitration fees in any of the petitioners' cases, arguing that Judge Maas's decision was wrong and applied, at most, to only Zhang's claim. In response, petitioners brought the action seeking to compel Twitter to arbitrate in accordance with the terms of the DRA by requiring Twitter to pay all ongoing fees.

II.  <u>Applicable Legal Principles</u>

Pursuant to Section 4 of the Federal Arbitration Act ("FAA"), "a party aggrieved by the . . . refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. A court must grant such a petition if it finds the parties "enter[ed] into a contractually valid arbitration agreement" and their "dispute fall[s] within the scope of [that] agreement." *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003). If, however, the issue falls outside the scope of the arbitration agreement, it is "subject to independent review by the courts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947 (1995).

A party who refuses to pay required arbitration fees, despite having the ability to do so, has refused to arbitrate within the meaning of Section 4. *See Hoeg v. Samsung*, 2024 WL 714566, at *7 (N.D. Ill. Feb. 20, 2024) ("[R]epeated failure to pay [initiation fees] after multiple deadlines, without any showing of hardship, is a classic refusal to pay scheme in violation of Section 4."); *Allemeier v. Zyppah*, 2018 WL 6038340, at *4 (C.D. Cal. Sept. 21, 2018) ("[B]y repeatedly refusing to pay its portion of the [initiation] filing fee . . . respondent has failed or refused to arbitrate."). In such circumstances, a court may order the recalcitrant party to arbitrate "in accordance with the terms of the [arbitration] agreement" by requiring the party to pay the required arbitration fees. 9 U.S.C. §

7

4; *see Hoeg*, 2024 WL 714566, at *7 ("[T]his Order can and does compel [respondent] to pay the requisite fees as set by the [arbitrator]."); *Allemeier*, 2018 WL 6038340, at *4 (similar); *Tillman v. Tillman*, 825 F.3d 1069, 1075 (9th Cir. 2015) ("If [respondent] had refused to pay for arbitration despite having the capacity to do so, the district court probably could still have sought to compel arbitration under the FAA's provision allowing such an order in the event of a party's 'failure, neglect, or refusal' to arbitrate.").

III. <u>Discussion</u>

The parties do not dispute that the DRA constitutes a valid arbitration agreement that applies to the substance of petitioners' underlying claims. Petitioners here initially sought an order resolving definitively whether Twitter was obligated to pay all ongoing fees. However, the DRA provides that "any disputes [regarding arbitration fees] will be resolved by the Arbitrator," DRA (Dkt. 6-11) § 6,[2] and in accordance with this provision, petitioners and

---

[2]    While the DRA does not expressly define the term "Arbitrator," it is clear from context that the term refers to the individual arbitrator appointed in each case (as opposed to JAMS as an organization). The DRA's arbitrator selection provision clearly contemplates that the "Arbitrator" is a natural person either agreed to by the parties or appointed in accordance with the JAMS Rules. *See* DRA (Dkt. 6-11) § 3 ("The Arbitrator shall be selected by mutual agreement of the Company and the Employee. . . . [T]he Arbitrator shall be an attorney . . . or a retired federal or state judicial officer who presided . . in the state where the arbitration will be conducted."). The JAMS Rules, in turn, set forth procedures for "JAMS" to select "an Arbitrator," making clear the rules similarly contemplate that the two are distinct entities. *See* JAMS Rule 15. In cases where an individual arbitrator has been appointed, this language is clear that the DRA delegates decisions about fee advancement to that person.

respondents now both agree that the ultimate decision of who is required to pay ongoing arbitration fees must be resolved by an individual arbitrator. *See* Resp. Am. Opp. (Dkt. 22) at 6 ("Petitioners' contention must be resolved in their individual arbitrations, not here."); Pet. Reply (Dkt. 15) at 3-4 ("[T]o the extent Respondents wish to raise their arguments to an arbitrator in each of Petitioners' cases, grant of the requested relief will facilitate that, not foreclose it.").[3]

Accordingly, rather than seeking a final resolution of the fee question, petitioners now seek an order requiring Twitter to pay all ongoing fees until such time as an individual arbitrator rules otherwise. The Court must therefore resolve two questions. First, can the Court grant such interim relief, requiring Twitter to pay such fees before an arbitrator has been given an opportunity to address the question? Second, if the Court has such authority, have petitioners

---

[3]    Petitioners ask the Court to use the *Zhang* decision to collaterally estop Twitter from contesting fee responsibility in each of their individual proceedings. However, insofar as resolution of the question of fees is for the individual arbitrator to decide -- as petitioners now concede is the case -- the decision of whether collateral estoppel applies is for the individual arbitrator, not the Court, to decide as well. *See National Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135-36 (2d Cir. 1996) ("[P]reclusion is a legal defense" and "[a]s such, it is itself a component of the dispute on the merits . . . which are assigned to an arbitrator under a broad arbitration clause."); *United States Fire Ins. Co. v. Nat'l Gypsum Co.*, 101 F.3d 813, 816 (2d Cir. 1996) (suggesting issue preclusive effects of prior judicial decision upon arbitration must be decided by future arbitrators since defenses to arbitrability like preclusion are arbitrable).

shown Twitter should in fact bear all such fees at this time (subject to re-allocation if an individual arbitrator so determines)? As explained below, the Court finds the answer to both questions is, yes.

    A. <u>Authority to Issue Relief</u>

    Twitter argues that only an individual arbitrator can order it to pay ongoing arbitration fees. *See* Resp. Am. Opp. (Dkt. 22) at 5 ("Petitioners ask this Court to resolve a question that is expressly reserved for their respective individual arbitrators: how the parties should share fees in each of Petitioners' arbitrations."). Twitter's position appears to be that, because the DRA provides that disputes regarding fees "will be resolved by the Arbitrator," DRA (Dkt. 6-11) § 6, neither JAMS nor the Court may require Twitter to pay all ongoing fees already incurred, because the DRA delegates exclusive authority regarding this matter to an individual arbitrator.

    While the Court agrees with Twitter, as apparently do petitioners, that ultimate resolution of any dispute over how fees should be allocated must be resolved by an individual arbitrator, the Court disagrees that the DRA precludes an interim allocation of fee responsibility until an individual arbitrator has ruled. The DRA provision specifying that fee disputes "will be resolved by the Arbitrator" does not answer the question of who is to resolve such fee disputes <u>before</u> an arbitrator has been appointed or been given a chance to address on the question. The contrary reading of this provision urged by Twitter would mean that <u>no one</u> has the power to order Twitter

to pay any ongoing arbitration fees already due until the point that an arbitrator has had a chance to rule.

The trouble with Twitter's interpretation, already evident from this very case, is that it would allow Twitter to effectively resist arbitration altogether. Indeed, on Twitter's theory, Twitter could refuse even to pay its case initiation fee -- which no one disputes it was required to pay -- and petitioners' only recourse would be to advance those sums until an arbitrator ordered to the contrary, even though courts routinely find such conduct constitutes an impermissible refusal to arbitrate. *See Hoeg*, 2024 WL 714566, at *7 (condemning party's attempt to avoid arbitration through a "refusal to pay scheme"); *Allemeier*, 2018 WL 6038340, at *4 (similar); *Polit v. Global Foods Int'l Corp.*, 2016 WL 632251, at *2 (S.D.N.Y. Feb. 17, 2016) (stating that a party may not "evade[] the possibility of liability by demanding arbitration and then defaulting in the arbitration proceeding" by failing to pay required fees); *Sarit v. Westside Tomato, Inc.*, 2019 U.S. Dist. LEXIS 202461 (S.D.N.Y. Nov. 20, 2019) (similar).

To be sure, an employee in the position of the petitioners here could in theory advance the ongoing arbitration fees and later seek reimbursement once the individual arbitrator had been assigned. But, at a minimum, this would allow Twitter to foist upon individual employees an arbitrary and often extreme financial burden. And if, as could often be the case, an individual employee lacked the funds necessary to assume such a burden, the result would be to allow Twitter to avoid arbitration entirely. Such an interpretation would frustrate

the "prime objective of an agreement to arbitrate . . . to achieve streamlined proceedings and expeditious results." *Preston v. Ferrer*, 552 U.S. 346, 357 (2008) (internal quotation marks omitted). Such an unreasonable interpretation cannot have been what was intended by the DRA.

Whereas the provision Twitter relies on -- and the DRA more generally -- is silent on the question of interim relief, the JAMS Rules and Minimum Standards, which are incorporated into the DRA,[4] contemplate that JAMS as an organization will have the power to make an initial ruling on this dispute. For example, the JAMS Rules provide that "[d]isputes concerning the appointment of the Arbitrator shall be resolved by JAMS," which suggests that JAMS has the authority to resolve disputes about application of the rules prior to the arbitrator's appointment. More importantly, where "an arbitration is based on an agreement that is required as a condition of employment" -- which, as discussed below, this Court has determined is the case here -- JAMS "Standards of Procedural Fairness for Employment Arbitration" apply. Minimum Standards § B. The Minimum Standards

---

[4]    DRA (Dkt. 6-11) § 3 ("[T]he dispute shall be heard by a neutral arbitrator chosen according to the procedures found in the then-current JAMS Employment Arbitration Rules and Procedures ('JAMS Rules')."); *id.* § 5 ("Employee and the Company agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ('JAMS'), pursuant to the then-current JAMS Rules."); JAMS Rule 2(a) ("The Parties may agree on any procedures not specified herein or in lieu of these Rules that are consistent with . . . JAMS policies (including, without limitation, the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness and Rules 15(i), 30 and 31).").

expressly delegate to JAMS the authority to make an initial assessment of whether the Minimum Standards are being complied with:

> If JAMS becomes aware that an arbitration clause or procedure does not comply with the Minimum Standards, it will notify the employer of the Minimum Standards and inform the employer that the arbitration demand will not be accepted unless there is full compliance with those standards. In assessing whether the standards are met and whether to accept the arbitration assignment, JAMS, as the ADR provider, will limit its inquiry to a facial review of the clause or procedure. If a factual inquiry is required, for example, to determine compliance with Minimum Standards, it must be conducted by an arbitrator or court.

*Id.* at p.4. This provision grants JAMS the authority to do precisely what happened here: make an initial determination about whether the Minimum Standards apply. And Minimum Standard No. 6 states that "[t]he only fee that an employee may be required to pay is the initial JAMS Case Management Fee. All other costs must be borne by the company, including any additional JAMS Case Management Fees and all professional fees for the arbitrator's services." *Id.* No. 6.

To be sure, JAMS's authority is "limit[ed] . . . to a facial review of the clause and procedures," and any disputes about compliance that turn on "a factual inquiry . . . must be conducted by an arbitrator or court," but that limitation does not strip any interim determination by JAMS of its force. *Id.* at p.4. Rather, the above-quoted provision clearly implies that interim fee determinations -- or at least those relating to the Minimum Standards -- will be made by JAMS in the first instance, and then later reviewed by an individual arbitrator or court.

The DRA must be read in conjunction with the JAMS' procedures that were incorporated therein, and, if possible, the two should be harmonized. *See Cedeno v. Sasson*, 100 F.4th 386, 394–95 (2d Cir. 2024) ("[C]ourts must rigorously enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted." (internal quotation marks omitted)). This specific provision granting JAMS the authority to make an interim determination regarding the applicability of the Minimum Standards confirms that the more general provision, relied upon by Twitter, specifying fee disputes "will be resolved by the Arbitrator" applies only after an arbitrator has been appointed and had a chance to rule. *See Int'l Bhd. of Elec. Workers, Loc. Union 43 v. NLRB*, 9 F.4th 63, 75 (2d Cir. 2021) ("It is a well-recognized tenet of contract interpretation that specific terms and exact terms are given greater weight than general language." (internal quotation marks omitted)). The Court therefore rejects Twitter's argument that no one can require Twitter to pay fees up until an individual arbitrator has been given a chance to rule on the question.

B. <u>Whether Twitter Is Required to Advance Arbitration Fees</u>

For the foregoing reasons, the Minimum Standards vest JAMS with discretion to make the initial determination about whether the Minimum Standards apply, and hence whether Twitter is obligated to pay all ongoing fees. Pursuant to this authority, JAMS, at the commencement of the arbitrations here, informed Twitter that the Minimum Standards

would apply and, after Twitter objected to this, JAMS's General Counsel sent Twitter a formal letter overruling its objection. *See* Cohen Decl. Ex. 3 (Dkt. 5-3). In making this determination, JAMS' General Counsel was authorized to act on behalf of JAMS as an organization and carry out its duty under the JAMS Rules. *See* JAMS Rule 1(c) ("[T]he authority and duties of JAMS as prescribed in the Agreement of the Parties and in these Rules shall be carried out by . . . the office of JAMS General Counsel or their designees.").

When asked at oral argument why this determination by JAMS' General Counsel did not control the outcome of this case, counsel for Twitter offered essentially two arguments. First, Twitter argued that the Minimum Standards do not apply, because the arbitration agreement here was not a condition of employment, and JAMS General Counsel got it wrong by finding otherwise. Second, Twitter argued that applying the Minimum Standards, and requiring Twitter to pay all ongoing fees, contradicts the terms of the DRA which Twitter argues require fees be apportioned equally between the parties.[5]

As a threshold matter, there is a strong argument that the Court should defer to the JAMS General Counsel's determination rejecting these arguments. Insofar as the parties agreed to have JAMS resolve

---

[5]    Twitter's counsel also observed that the JAMS General Counsel, in her letter, suggested only that JAMS would consider revising its position about the Minimum Standards' applicability in light of an individual arbitrator's ruling, but did not expressly concede that JAMS would defer to it. The speculative possibility that JAMS might refuse to comply with an individual arbitrator's ruling in Twitter's favor does not provide a basis for denying petitioners' request for relief here.

interim fee disputes, that delegation should be enforced in a similar manner as any other agreement to arbitrate. *Cf. Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) ("[A]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." (internal quotation marks omitted)).

Procedural questions relating to the rules of arbitration are generally matters for the arbitrator, and not for the court, to resolve. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85 (2002) ("[P]rocedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide." (internal quotation marks omitted)); *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Zaro Bake Shop, Inc.*, 2021 WL 2350094, at *14 (S.D.N.Y. June 8, 2021) ("As a general matter, in all areas of arbitration law, the court gives deference to an arbitrator's application of the procedural rules of the arbitral tribunal."). Whether the Minimum Standards apply is just such a procedural issue generally reserved for the arbitrator. *See Giordano v. Sparrow Healthcare, LLC*, 2022 WL 3597084, at *2 (M.D. Fla. May 13, 2022) (holding that dispute over which set of AAA rules applied was "a procedural dispute" which "the arbitrator is in the best position to" resolve). The same is generally true as to disputes over which party is obligated to pay arbitration fees. *See Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 887 (5th Cir. 2009)

(holding that "[p]ayment of fees is a procedural condition precedent" to be resolved by arbitrator); *see also Suqin Zhu v. Hakkasan NYC LLC*, 291 F. Supp. 3d 378, 389 (S.D.N.Y. 2017) ("Generally, the interpretation of specific provisions of the arbitration agreement are not questions of arbitrability and are reserved for the arbitrator.")

While the Court is unaware of any case expressly extending such deference to determinations by the arbitration association itself, the Court sees no reason why such deference should not apply with equal force here. The JAMS General Counsel is, in effect, standing in the shoes of the individual arbitrator until one has ruled to the contrary, and so in that sense her decision is no different than that of an individual arbitrator. Further, the rationale behind this rule is that arbitrators are "comparatively more expert about the meaning of their own rule[s]," and this logic applies with equal (if not greater) force to decisions by the JAMS General Counsel. *Howsam*, 537 U.S. at 85.

Having said this, there is some authority that arguably suggests that a party may not be required to pay fees in a manner that is inconsistent with the parties' arbitration agreement, at least where an arbitration agreement clearly directs that fees be split in a particular manner. *See Brown v. Peregrine Enterprises, Inc.*, 2023 WL 8800728, at *3 (2d Cir. Dec. 20, 2023) (concluding party who refused to comply with AAA's directive to pay entirety of ongoing arbitration fees had not waived right to arbitrate where arbitration agreement expressly provided that fees would be split equally). If Twitter were correct that the DRA clearly requires fees be split in a particular

manner, arguably the Court lacks the authority under Section 4 of the FAA to order Twitter to pay those fees arbitration. *See* 9 U.S.C. § 4 (granting Court authority to direct parties to arbitration "in the manner provided for in such agreement"). Whatever the merits of this line of argument, it does not matter here because, as explained below, even were the Court to review Twitter's merits arguments *de novo*, the Court would reach the same conclusion as JAMS.

1. Applicability of Minimum Standards & JAMS Rule 31(c)

The Minimum Standards apply to "all arbitrations based on pre-dispute agreements that are required as a condition of employment." Minimum Standards at 1. If the Minimum Standards are applicable, "[t]he only fee that an employee may be required to pay is JAMS' initial Case Management Fee. All other costs must be borne by the company, including any additional JAMS Case Management Fee and all professional fees for the arbitrator's services." Minimum Standards No. 6. Similarly, JAMS Rule 31(c) provides that "[i]f an Arbitration is based on a clause or agreement that is required as a condition of employment, the only fee that an Employee may be required to pay is the initial JAMS Case Management Fee." JAMS Rule 31(c).

Twitter argues that arbitration is not a "condition of employment" because Twitter employees have the right to opt out of arbitration under the DRA. Resp. Am. Opp. (Dkt. 22) at 22. All Twitter employees are required to sign the DRA. However, the DRA specifies that "[y]ou can choose to opt out of this Agreement – you have 30 days to opt out," and states "**[a]rbitration is not a mandatory condition of**

**Employee's employment at the Company.**" DRA (Dkt. 6-11) § 8 (emphasis in original).

A close reading of the Minimum Standards and JAMS Rule 31(c) makes clear that this opt-out right does not remove the DRA from the rules' scope.[6] The question turns on what noun is modified by the phrase "is required as a condition of employment." In Twitter's view, this phrase modifies "Arbitration," such that if an employee is able to opt out of arbitration, the rule does not apply. However, if the phrase "is required as a condition of employment" modifies the phrase "pre-dispute agreements," JAMS Rule 31(c) would still apply, because all employees are required to sign the DRA as a condition of employment, whether or not they later opt out of arbitration. *See* Cohen Decl. (Dkt. 5) ¶ 2; Cohen Reply Decl. Ex. 1 (Dkt. 15-2) ¶¶ 2-4.

The Court finds the latter interpretation superior. Treating "a clause or agreement that is required as a condition of employment" as one unified phrase is by far the more natural reading of the provision, and is supported by the well-established grammatical rule of the last antecedent, which holds that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). By contrast, it is awkward to say that "Arbitration" is modified by "is required as a condition of employment" (i.e. "an Arbitration . . . is

---

[6]    The Court focuses its analysis on the text of JAMS Rule 31(c), although the language of both provisions appears substantively identical.

required as a condition of employment"), since "an Arbitration" is not really what is being agreed to as a "condition of employment." Rather, the condition of employment is an agreement itself (note that the rules does not refer to "an arbitration agreement" but rather "Arbitration based on a pre-dispute clause or agreement"). Further, if the phrase "that are required as a condition of employment" modified "arbitrations," then the intervening phrase "based on a pre-dispute clause or agreement" would be rendered utterly superfluous, because all "arbitrations . . . required as a condition of employment" would necessarily be "based on pre-dispute agreements."

To be sure, if the employee is not required to arbitrate, one might ask why it should matter that they are required to sign the agreement containing the right to opt out. But upon reflection, one can easily see why JAMS would draw this distinction. Ample empirical evidence in the context of consumer contracts demonstrates consumers rarely if ever read, let alone understand, contracts of adhesion they sign, and there is little reason to think the result is any different in the context of the employment agreements such as this. *See* Restatement of the Law, Consumer Contracts (Tentative Draft No. 2) § 2, Reporters' Notes (2022) ("[C]redible empirical evidence, as well as common sense and experience, suggests that consumers rarely read standard contract terms no matter how those terms are disclosed."); Ian Ayres & Alan Schwartz, *The No-Reading Problem in Consumer Contract Law*, 66 Stan. L. Rev. 545, 547-548 (2014) (collecting empirical evidence). The notion that employees read contracts of adhesion, such

as those at issue here is, at best, a legal fiction. While, inevitably such a fiction may sometimes be necessary, e.g., to promote commerce, nevertheless as a matter of policy it is entirely reasonable for JAMS to conclude that granting an employee the right to opt out of arbitration will have little practical effect in the overwhelming majority of cases, so that requiring the employee to enter into the agreement will as a practical matter be little different from forcing them to arbitrate.

This policy rationale confirms what is apparent from the plain text of the JAMS Rules. If an employee is required to sign an agreement containing an arbitration clause as a condition of employment, JAMS Rule 31(c) and the Minimum Standards apply, even if the employee has the opportunity to opt out of arbitration.

2. Conflict with DRA

Even if JAMS Rule 31(c) and the Minimum Standards apply to petitioners' employment agreements and arbitrations, Twitter still claims that requiring it to pay all ongoing fees conflicts the with express terms of the DRA. The relevant provision provides that "[i]f under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law." DRA (Dkt. 6-11) § 6. The parties agree that New York law, applicable here, does not expressly require Twitter to pay, although the parties also cite no New York law requiring a 50/50 split. *See* Resp. Am. Opp. (Dkt. 22) at 21; Pet. Reply (Dkt. 15) at 8. Nevertheless, Twitter argues that

the word "apportioned" in this provision means that the fees must be split 50/50 between the parties. *See* Resp. Am. Opp. (Dkt. 22) at 21. In support of argument, Twitter cites several dictionary definitions of "apportion." *See Oxford English Dictionary* 579 (2d ed. 1989) ("To assign in proper portions or shares; to divide and assign proportionally; to portion out, to share."); *Webster's New International Dictionary* 132 (2d ed. 1955) ("To divide and assign in just proportion; to divide and distribute proportionally; to make an apportionment of; portion out; to allot.").

But even these definitions do not require a 50/50 split. Thus, even using these definitions, the fact arbitration that fees must be "apportioned" does not dictate *how* the fees should be apportioned. *Cf. Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 934 (11th Cir. 2019) (concluding contract provision requiring each party pay "its own attorneys' fees and other costs of the arbitration" did not conflict with JAMS's Minimum Standards for consumer contracts, requiring the employer pay all ongoing costs, because the provision simply "suggests that the parties must pay their own costs as determined by that organization"); *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004) (suggesting arbitrator "apportion[ed]" ongoing arbitration fees by exercising its discretion to require one party to pay 100% of those fees). The dictionary definitions Twitter cites make reference to "divid[ing] and assign[ing] proportionally, or "distribut[ing] proportionally," but this says nothing about how large the respective portions should be. And other definitions of the

word in the very same dictionaries refer to allocating the "proper portions" or "just proportion," which of course begs the question of what is "proper" or "just." *See* Pet. Reply (Dkt. 15) at 8. Here, invoking the Minimum Standards, JAMS apportioned the case initiation fee to petitioners and all other ongoing fees to Twitter. This allocation is entirely consistent with, and indeed apparently mandated by, the DRA.

Twitter argues that, if the Minimum Standards were incorporated into the DRA, and it were required to pay all ongoing fees, this provision requiring fees be "apportioned" would be rendered superfluous, because in every case Twitter would be obligated to pay. *See* Resp. Am. Opp. (Dkt. 22) at 24-25. However, even if all ongoing fees must be apportioned to the employer, this still leaves open the possibility that the case initiation fee be apportioned to the employee. Further, the Minimum Standards specify that they "do not apply if the agreement to arbitrate was individually negotiated by the employee and employer, or if the employee was represented or advised by counsel during the negotiations." Minimum Standards, at 5. While there is no suggestion these exceptions apply here, it is possible that they apply to some other Twitter employees, and in those cases the arbitrator would presumably have the authority to allocate fees between the respective parties more freely because the Minimum Standards would be inapplicable.

IV.  <u>Conclusion</u>

For the foregoing reasons, the Court grants the motion to compel arbitration and orders Twitter to pay all ongoing arbitration fees for petitioners' claims unless and until the individual arbitrator in each of petitioners' respective arbitrations rules to the contrary.

SO ORDERED.

New York, NY
July __, 2024

_____
JED S. RAKOFF, U.S.D.J

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

## ADDENDUM "B"

## I. ISSUES ON APPEAL

Whether the district court erred in ordering appellants under 9 U.S.C. § 4 to pay ongoing arbitration fees for petitioners' arbitrations.

## II. STANDARD OF REVIEW

The Court reviews a grant of a petition to compel arbitration de novo. *E.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*, 88 F.3d 129, 132 (2d Cir. 1996)