# 24-1948

In the

## United States Court of Appeals

for the

## Second Circuit

Burgious Frazier, Jr., Yosub Kim, Wayne Krug, Ben Perez, Vanessa Szajnberg, Nicholas Tapalansky, and Shelly Yip,

*Petitioners-Appellees,*

*vs.*

X Corp., formerly known as Twitter, Inc., X Holdings Corp, formerly known as X Holdings I, Inc.,

*Respondents-Appellants.*

On Appeal from the United States District Court for the Southern District of New York, No. 24-cv-2135, Hon. Jed S. Rakoff

**BRIEF FOR PETITIONERS-APPELLEES**

Akiva Cohen
KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930

*Attorneys for Petitioners-Appellees*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Petitioners-Appellees Burgious Frazier, Jr., Yosub Kim, Wayne Krug, Ben Perez, Vanessa Szajnberg, Nicholas Tapalansky, and Shelly Yip, are not corporate parties, and therefore Federal Rule of Appellate Procedure 26.1 does not require any disclosures from them.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................1

INTRODUCTION ..............................................................................................1

STATEMENT OF THE ISSUES ........................................................................6

STATEMENT OF THE CASE.............................................................................8

    A.    Twitter Requires Employees to Sign the Arbitration Agreement as a
Condition of Employment. .........................................................................8

    B.    Twitter Selects the Arbitration Provider and Rules Governing the
Arbitration.................................................................................................9

    C.    Twitter Engages in Procedural Sandbagging That Halts Employees'
Arbitrations ..............................................................................................12

    D.    JAMS' Determination That the Minimum Standards Apply is
Affirmed by An Arbitrator ........................................................................14

    E.    The District Court's Opinion and Order Affirms JAMS'
Determination that Rule 31(c) and the Minimum Standards Apply .............15

STANDARD OF REVIEW ................................................................................20

SUMMARY OF ARGUMENT ..........................................................................21

ARGUMENT ...................................................................................................23

    A.    The District Court Correctly Found that the DRA and JAMS' Rules
and Procedures Delegated Authority to JAMS to Determine the Initial
Applicability of the Minimum Standards. ....................................................25

    B.    JAMS' Determination Regarding Procedural Issues Related to the
Arbitration is Not Reviewable. ...................................................................32

    C.    JAMS' Application of the Minimum Standards and Rule 31(c) was
Correct. ....................................................................................................38

**1.** JAMS Rule 31(c) and Minimum Standards Apply to the DRA, Which Petitioners Were Required to Execute to Obtain Employment. ..........................................................................38

**2.** The DRA's Fee Apportionment Clause Does Not Conflict With JAMS Rule 31(c) and the Minimum Standards ................................42

D. The Court Had Authority to Compel Twitter to Arbitrate According to the DRA, Including To Comply With The Fee Requirements Imposed By JAMS. ..........................................................................47

CONCLUSION ..........................................................................49

TABLE OF AUTHORITIES

**Cases**

*151 W. Assocs. v. Printsiples Fabric Corp.*,
    61 N.Y.2d 732 (1984) ................................................................46

*Allemeier v. Zyppah, Inc.*,
    No. CV 18-7437, 2018 WL 6038340
    (C.D. Cal. Sept. 21, 2018) ....................................................48

*Am. Exp. Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013)................................................................28

*Aramony v. United Way of Am.*,
    254 F.3d 403 (2d Cir. 2001) ..................................................30

*Bedgood v. Wyndham Vacation Resorts, Inc.*,
    88 F.4th 1355 (11th Cir. 2023) ..............................................35

*Benedict P. Morelli and Assocs., P.C. v. Shainwald*,
    49 A.D.3d 476 (2008) ....................................................... 32, 45

*Billie v. Coverall N. Am.*,
    594 F. Supp. 3d 479 (D. Conn. 2022) ....................................33

*Brady v. Williams Cap. Grp., L.P.*,
    14 N.Y.3d 459 (2010)..............................................................46

*Brown v. Dillard's, Inc.*,
    430 F.3d 1004 (9th Cir. 2005) ........................................... 5, 48

*Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*,
    346 F.3d 360 (2d Cir. 2003) ..................................................23

*Cir. City Stores, Inc. v. Ahmed*,
    283 F.3d 1198 (9th Cir. 2002) ................................................42

*Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*,
    588 F.3d 884 (5th Cir. 2009) .............................................. 34, 49

iv

*Delano v. Mastec, Inc.*,
No. 8:10-CV-320-T-27MAP, 2010 WL 4809081
(M.D. Fla. Nov. 18, 2010) ....................................................... 32, 45

*Doctor's Assocs., Inc. v. Distajo,*
66 F.3d 438 (2d Cir. 1995) ...........................................................21

*Eliasieh v. Legally Mine, LLC*,
No. 18-CV-03622-JSC, 2020 WL 1929244
(N.D. Cal. Apr. 21, 2020) ..............................................................29

*Essex v. Children's Place, Inc.*,
No. 15-cv-5621, 2017 WL 6000347
(D.N.J. Dec. 4, 2017) ....................................................................42

*Freeman v. SmartPay Leasing, LLC*,
771 F. App'x 926 (11th Cir. 2019) ...............................................46

*Giordano v. Sparrow Healthcare, LLC*,
No. 6:21-CV-1832,
2022 WL 3597084 ........................................................................33

*Goobich v. Excelligence Learning Corp.*,
No. 19-cv-6771, 2020 WL 5593011
(N.D. Cal. Sept. 18, 2020) ...................................................... 31, 46

*Greco v. Uber Techs., Inc.*,
No. 4:20-CV-02698, 2020 WL 5628966
(N.D. Cal. Sept. 3, 2020) ..............................................................34

*Hernandez v. MicroBilt Corp.*,
88 F.4th 215 (3d Cir. 2023) ...................................................... 36, 38

*Horst Constr. Co. v. Jeffries*,
No. 2011-CV-02543, 2012 WL 13018331
(E.D. Pa. Mar. 27, 2012)................................................................48

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002).......................................................... 18, 33, 34

*Levitt v. Lipper Holdings, LLC*,
   No. 03 CIV. 0266, 2006 WL 1330028
   (S.D.N.Y. May 15, 2006) ...............................................................48

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*
   363 F.3d 1010 (9th Cir. 2004) ...................................... 31, 34, 45, 49

*Marino v. CVS Health*,
   698 F. Supp. 3d 689 (S.D.N.Y. 2023) ..........................................41

*Mastrobuono v. Shearson Lehman Hutton*,
   514 U.S. 52 (1995).........................................................................44

*Maven Techs., LLC v. Vasile*,
   46 N.Y.S.3d 720 (2017)..................................................................44

*Melton v. Pavilion Behav. Health Sys.*,
   843 F. App'x 9 (7th Cir. 2021) ......................................................42

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016) .......................................................42

*Pre-Paid Legal Servs., Inc. v. Cahill*,
   786 F.3d 1287 (10th Cir. 2015) .....................................................48

*Rodriguez v. Four Seasons Hotels, Ltd.*,
   No. 09 CIV 2864, 2009 WL 2001328
   (S.D.N.Y. July 10, 2009) ................................................................41

*Rosa v. X Corp.*,
   No. 2:23-CV-22908, 2024 WL 4903619
   (D.N.J. Nov. 27, 2024) ...................................................................42

*Simeon v. Domino's Pizza LLC*,
   No. 17CV5550, 2019 WL 7882143
   (E.D.N.Y. Feb. 6, 2019) .................................................................41

*This Is Me, Inc. v. Taylor*,
   157 F.3d 139 (2d Cir. 1998) ...........................................................31

*Wallrich v. Samsung Electronics America, Inc.*,
   106 F.4th 609 (7th Cir. 2024) .................................................. 37, 49

vi

*Weiss v. Weiss*,
52 N.Y.2d 170 (1981) ........................................................................30

*Young v. Refined Techs., Inc.*,
No. 22-cv-1032, 2022 WL 3012536
(C.D. Cal. June 17, 2022) ...............................................................42

**Statutes**

42 U.S.C. § 2000e ...................................................................................1

Federal Arbitration Act,
9 U.S.C. § 4 ................................................................ 4, 23, 24, 48

New York Labor Law Article 25-A *et seq.* ..............................................1

Worker Adjustment and Retraining Notification Acts,
29 U.S.C. §2100 *et seq.* .................................................................1

**Other Authorities**

JAMS Employment Arbitration Rules & Procedures.................................... *passim*

## **INTRODUCTION**

Petitioner-Appellees ("Petitioners") are seven former employees of Twitter who were required to execute Twitter's Dispute Resolution Agreement ("DRA") as a condition of accepting employment at Twitter. [1] Twitter's DRA requires that any covered arbitration be conducted by alternative dispute resolution provider JAMS "pursuant to the then-current JAMS Employment Arbitration Rules and Procedures ('JAMS Rules')."[2] AA225 (DRA §§ 3 and 5). After Petitioners were terminated by Twitter and denied the severance to which they were entitled, Petitioners filed separate arbitration demands with JAMS and sought to proceed with arbitration of their claims against Twitter's successor, X Corp. and X Holdings, Inc. (collectively "Twitter"). Petitioners' claims include breach of contract; promissory estoppel; fraud; violation of federal and New York state Worker Adjustment and Retraining Notification Acts, 29 U.S.C. §2100 *et seq.*, and New York Labor Law Article 25-A *et seq.*; discrimination in violation of federal and state anti-discrimination laws,

---

[1] The DRAs that each Petitioner signed are substantively similar with respect to the issues to be addressed by this Court. See AA224-26, AA262-64, AA300-02, AA339-41, AA377-79, AA416-18, AA455-57. For ease of reference, this brief cites the DRA of lead Petitioner Burgious Frazier, Jr. throughout.

[2] The DRA further provides that these JAMS Rules "may be accessed at: https://www.jamsadr.com/rules-employment-arbitration/" or obtained from Twitter's Human Resources. AA225 (DRA § 3).

1

including 42 U.S.C. § 2000e and the New York Human Rights Law; and wage theft.

Twitter, however, refused to pay its share of the required arbitration fees. The DRA incorporates the JAMS Rules, including Rule 31(c) of the JAMS Employment Rules and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness (the "Minimum Standards"). Both JAMS Rule 31(c) and the Minimum Standards provide that, where an arbitration is based on an agreement "that is required as a condition of employment, the only fee that an Employee may be required to pay is the initial JAMS Case Management Fee." JAMS Rule 31(c). The DRA also includes a clause addressing arbitration fees, providing that "if under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator." AA225 (DRA § 6). Twitter contends that these contractual terms are in conflict and that therefore it need not comply with JAMS' rules and policies regarding fee apportionment or pay invoices issued by JAMS even as an interim step necessary to allow an arbitrator to assess its purported interpretation of the DRA.

JAMS itself has already determined that Rule 31(c) and the Minimum Standards apply. JAMS' General Counsel issued a determination on Twitter's

2

request for a 50-50 split of arbitration fees in arbitrations pending in New York, as well as select other states. JAMS confirmed its determination that the Minimum Standards apply, as JAMS previously notified the Parties at the outset of each case. AA83. While an employee may voluntarily agree to contribute to JAMS' fees, "absent employee agreement JAMS will continue to issue invoices in these matters" consistent with the Minimum Standards. AA83. Further, JAMS notified the Parties that "any further issue about whether the Minimum Standards apply in a given case should be directed to the arbitrator in the case." AA83.

Twitter itself selected the JAMS rules and procedures to govern the arbitrations. It was of course aware of these obligations regarding arbitration fees when it required Petitioners to sign the DRAs, which directed Petitioners and other employees to review the JAMS Rules on JAMS' website or to obtain them from Twitter's HR department. Yet Twitter now insists that arbitration may only proceed if an individual arbitrator – who JAMS cannot appoint without payment of the arbitration fees in the invoices JAMS issued to Twitter – first decides whether Twitter should be required to pay the arbitration fees. More specifically, Twitter insists that Petitioners, and JAMS, accept Twitter's unilateral interpretation of its DRA to mandate that Petitioners split the arbitration costs 50-50 before any arbitration can proceed. Twitter offers no support for its position that New York law requires a 50-50 "apportionment" between the company and the employee, and

3

the District Court found no conflict between JAMS' Minimum Standards and the fee provision in Section 6 of the DRA. Instead, the DRA provides the arbitrator with authority to apportion fees pursuant to the Minimum Standards, including where an express exception to the Minimum Standards applies.

Twitter maintained its refusal to comply with its arbitration agreement, and Petitioners therefore filed a Petition to Compel Arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. Petitioners sought an order compelling Twitter to arbitrate in accordance with the terms of the agreement, which requires that Twitter arbitrate pursuant to the JAMS Rules, including timely paying the invoices issued by the arbitration provider.

Upon careful review of the Petition, the parties' briefs and oral argument, and the arbitral determination made by JAMS regarding fees, the District Court found that: (1) Twitter's DRA incorporates the JAMS Rules and Minimum Standards, which expressly delegate to JAMS the authority to make an initial ruling on fee apportionment (SPA12-17); (2) JAMS correctly determined that the Minimum Standards applied to Petitioners where all Twitter employees were required to sign the DRA as a condition of employment (SPA18-21); and (3) the DRA's terms regarding apportionment of fees did not require a 50-50 fee split and did not conflict with the Minimum Standards (SPA21-23). The District Court granted the petition to compel arbitration and ordered "Twitter to pay all ongoing

4

arbitration fees for petitioners' claims unless and until the individual arbitrator in each of petitioners' respective arbitrations rules to the contrary." AA24.

Twitter's litigation tactics have forced Petitioners into an impossible position: Twitter drafted the DRA and selected the rules and arbitration forum, which it required Petitioners to agree to in order to obtain employment. After Petitioners initiated arbitrations and paid their share of arbitration fees, Twitter now contends that no authority can compel it to arbitrate pursuant to those rules – not even the arbitrator Twitter itself selected. In effect, Twitter will not allow any arbitration to proceed unless Petitioners accede to its unilateral interpretation of the fee provision, despite decisions from JAMS' General Counsel, a JAMS arbitrator, and a district court rejecting its unfounded position. Twitter's conduct "displays a dark side of our nation's policy in favor of arbitration," where one party can prevent the vindication of important statutory rights protecting employees from discrimination and unpaid wages by refusing to pay its share of arbitration fees. *See Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1013 (9th Cir. 2005). Twitter's attempt to game the system undermines the strong policy of encouraging arbitration that courts have repeatedly affirmed underlies the FAA.

The District Court's order should be affirmed and the Petition to Compel Arbitration should be granted.

## STATEMENT OF THE ISSUES

1.	The Parties' arbitration agreement selects JAMS as the arbitration provider and provides for arbitration under the JAMS Rules. The JAMS Rules allow JAMS to resolve disputes that arise and require resolution before an arbitrator can address them, as an interim measure and subject to later determination by an arbitrator once appointed. Did the District Court correctly determine that the arbitration agreement delegated to JAMS the authority to apportion arbitration fees, pending any ultimate determination by an individual arbitrator, where the arbitration agreement provides that JAMS' Rules and Procedures shall control the arbitration?

2.	The Parties' arbitration agreement provides that arbitration fees are to be apportioned in accordance with New York law, and New York law allows for an arbitrator to apportion the fees in any manner. The JAMS Rules, which the parties agreed to abide by, provide that where the arbitration is based on a clause or agreement required as a condition of employment, all of the arbitration fees other than a small case initiation fee will be apportioned to the employer. Did the District Court correctly determine that the arbitration agreement's fee provision does not conflict with JAMS' Rules and Procedures?

3.	Twitter required every Petitioner to execute the arbitration agreement as a condition of their employment with Twitter, expressly informing Petitioners

6

that returning a fully executed arbitration agreement was a prerequisite to employment. The arbitration agreement included a provision that allowed Petitioners to separately request and submit an opt-out form terminating the agreement, but Petitioners had no option to avoid executing and returning the agreement if they wanted a job at Twitter. Considering the meaning of its own Rules, JAMS determined that such an arbitration agreement was a clause or agreement required as a condition of employment, notwithstanding the opt-out clause. The District Court agreed. Did the District Court err in not overruling JAMS' interpretation of its own Rules?

4. Section 4 of the FAA directs courts to compel arbitration in accordance with the terms of the parties' agreement, which terms include provisions governing how fees will be paid by the parties, whether expressly (such as where an arbitration agreement provides for a specific percentage that each party will bear) or by incorporation of other rules (such as where an agreement provides for arbitration under a set of rules requiring a particular split, subject to the arbitrator's discretion). Did the District Court correctly determine that it had the authority to require Twitter to pay the fees invoiced by its chosen arbitration provider in accordance with the applicable arbitration rules, pending any contrary determination by the arbitrator?

7

## STATEMENT OF THE CASE

**A.   Twitter Requires Employees to Sign the Arbitration Agreement as a Condition of Employment.**

For years, Twitter has required its employees to execute a form arbitration agreement, the Dispute Resolution Agreement ("DRA") as a condition of employment.  AA14-17.  The DRA applies broadly to include "any dispute arising out of or related to [the employee's] employment with Twitter, Inc."  AA224 (DRA § 1).  The DRA further provides: "Disputes covered by this Agreement include, without limitation, disputes arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement."  Id.

Twitter's practice was to send offer letters to successful job applicants. AA10, ¶ 2; AA477.  Twitter's offer letters explain the steps the applicant must take to accept a job offer, which include signing the DRA.  AA13; AA477.  Twitter has submitted sworn declarations to other courts as part of a motion to compel arbitration stating that it was mandatory for employees to execute the DRA (directing the employee to "sign and date this offer letter, and [*inter alia*] the [DRA]" and warning the employee that "the offer will expire if the signed documents are not returned" by the deadline).  AA484.  Twitter uses Adobe Sign to collect electronic signatures on those employment documents.  AA478.  Twitter

8

has largely automated the onboarding process for new employees, such that once the applicant submits executed documents through Adobe Sign, the documents are stored, Twitter's People Services team is notified, and a new Workday profile is created for the newly hired Twitter employee.  AA477, ¶ 3.  This automated process requires the employee to execute the DRA.  AA15-17, ¶¶3-6; AA477, ¶¶ 3-4.

> **B.    Twitter Selects the Arbitration Provider and Rules Governing the Arbitration.**

For each of the Petitioners, Twitter's form DRA provides that the "Employee and the Company agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ('JAMS'), pursuant to the then-current JAMS Rules," referring to the defined term "JAMS Employment Arbitration Rules and Procedures."  AA225 (DRA §§ 3 and 5).  The DRA incorporates JAMS Rules by reference and contains a link to the JAMS Employment Arbitration Rules webpage, which in turn contains a link to the "Complete List of Rules & Procedures," including the Minimum Standards.[3]  *Id*.  Notably, the DRA does not state that, should there be any conflict between the DRA and the JAMS Rules, the

---

[3] Specifically, the Minimum Standards, which are incorporated into the JAMS Employment Arbitration Rules and Procedures, are available at the JAMS website under "JAMS Employment Rules & Procedures," *available at* https://www.jamsadr.com/rules-employment (last visited January 27, 2025).

DRA controls.

Rule 2 of the JAMS Rules provides that the parties to an arbitration can agree to any procedures not specified in the JAMS Rules, or otherwise alter the JAMS Rules, only if any such alterations are "consistent with the applicable law and JAMS policies (including without limitations, the JAMS Policy on Employment Arbitration Minimum Standards . . . .").  JAMS adopted its Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("Minimum Standards") effective July 15, 2009.  Minimum Standards.  The Minimum Standards apply where "an arbitration is based on a clause or agreement that is required as a condition of employment."  *Id*. at § B.  Minimum Standard Number 6 provides in pertinent part: "An employee's access to arbitration must not be precluded by the employee's inability to pay any costs or by the location of the arbitration.  The only fee that an employee may be required to pay is JAMS' initial Case Management Fee.  All other costs must be borne by the company, including any additional JAMS Case Management Fee and all professional fees for the arbitrator's services."  Id. at p.4.  The JAMS Employment Arbitration Rules & Procedures have a substantively identical requirement in Rule 31(c), providing that "[i]f an Arbitration is based on a clause or agreement that is required as a condition of employment, the only fee that an Employee may be required to pay is the initial JAMS Case Management Fee."  JAMS Employment Rule 31(c).

10

The JAMS Rules describe JAMS' authority over certain procedural and administrative matters related to the arbitration, as set forth in Rule 6 (providing that "JAMS may convene…administrative conferences to discuss any procedural matter relating to the administration of the Arbitration").  JAMS Employment Rule 6(a).  This authority includes issuing invoices pursuant to the applicable fee schedule (JAMS Rule 5(b)), determining whether all requirements for commencement of an arbitration have been met (JAMS Rule 5(a)-5(b)), ordering the suspension or termination of proceedings where a party has failed to pay fees or expenses in full (JAMS Rule 6(c)), consolidation of multiple arbitrations (JAMS Rule 6(e)), designating the Chairperson of a multi-arbitrator panel (JAMS Rule 7), resolving disputes concerning the appointment of Arbitrators (JAMS Rule 11), and removal of a challenged Arbitrator (JAMS Rule 15).

Rule 1(c) of the JAMS Rules provides that "[t]he authority and duties of JAMS as prescribed in the Agreement of the Parties and in these Rules shall be carried out by the JAMS National Arbitration Committee ("NAC") or the office of JAMS General Counsel or their designees."  JAMS Employment Rule 1(c).

JAMS Rule 2(a) provides that "the Parties may agree on any procedures not specified herein or in lieu of these Rules that are consistent with…JAMS policies (including, without limitation, the JAMS [Minimum Standards]" and Rule 31. JAMS Employment Rule 2(a).

11

### C.     Twitter Engages in Procedural Sandbagging That Halts Employees' Arbitrations

Elon Musk acquired Twitter and promptly laid off nearly 75% of the workforce, offering them a paltry severance far less than the amount Twitter had previously promised the employees, which prompted thousands of former Twitter employees to file arbitration demands seeking redress.  AA11, ¶ 3.  In the months after Twitter's former employees filed their arbitration demands, JAMS invoiced Twitter for its share of the arbitration initiation fees and indicated that JAMS had concluded that the Minimum Standards would apply to the arbitrations.  *Ibid*.  Twitter did not object to these statements and, instead, filed answers and affirmative defenses, paid its share of the case initiation fees, and participated in the selection of arbitrators.  *Ibid*.

After proceeding in arbitration for several months, on June 2, 2023, Twitter began objecting to the application of the JAMS Rules requiring Twitter to pay the fees, arguing that Section 6 of the DRA conflicted with or superseded those Rules.  AA66-68.  Section 6 of the DRA provides that "if under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator."   AA28 (DRA § 6).  Twitter contended that this clause requires that the arbitration fees be

split 50-50 between Twitter and each claimant based on the word "apportioned" and that only an individual arbitrator – whom Twitter refused to pay the invoice to engage – could make any determination on fee apportionment. AA66.

JAMS' General Counsel rejected Twitter's arguments in a formal letter and stated that the Minimum Standards would apply to each arbitration proceeding. AA83. The General Counsel stated that JAMS applied its Minimum Standards nationwide "to provide these protections for employees where the arbitration agreement is not negotiated and is required as a condition of employment." AA83. JAMS had notified Twitter at the outset of each case that the Minimum Standards would apply and were not subject to party-agreed procedures or modification as described in JAMS Rule 2. Further, while an employee is not prevented from contributing to JAMS fees, "absent employee agreement JAMS will continue to issue invoices in these matters consistent" with the Minimum Standards. AA83. JAMS noted that any further issue about the application of the Minimum Standards in a given case should be directed to the arbitrator in that case. AA83.

Twitter then wrote JAMS and indicated that it would refuse to proceed under the Minimum Standards and requested that JAMS no longer administer the arbitrations or invoice Twitter for any fees or costs. AA86.

The practical effect of Twitter's position (and refusal to pay the arbitration fees) was to halt the progress of hundreds of arbitrations involving former Twitter

13

employees who contended that they had been denied their promised severance

wages and benefits and whose civil rights had been violated.  AA103-104.

Twitter's refusal to pay the mandatory arbitration fees required by the JAMS Rules

prevented Petitioners and hundreds of their former colleagues from having any

aspect of their dispute – including the apportionment of fees – heard in the forum

Twitter chose and imposed upon them.

### D.   JAMS' Determination That the Minimum Standards Apply is Affirmed by An Arbitrator

One claimant, Yunfeng Zhang, put up the fees necessary to have an

arbitrator, retired Magistrate Judge Frank Maas ("Arbitrator Maas"), rule on

Twitter's position that the DRA did not require it to abide by the fee-allocation

rules of its chosen forum.  Like Petitioners in this case, Mr. Zhang was employed

by Twitter and signed, as a condition of employment, a DRA substantively

identical in relevant part to the ones at issue in this case.  And, as in Petitioners'

arbitrations, Twitter insisted that the DRA relieved it of its obligation to make

JAMS-ordered payments of arbitration and arbitrator fees and that the Minimum

Standards did not apply because employees could later opt out of arbitration.

AA153-156.  Even more confounding, Twitter argued that this duly appointed and

engaged arbitrator should not even address the issue because JAMS would require

Twitter to agree to the application of the Minimum Standards anyway.

14

After extensive briefing and oral argument (AA11-12, ¶¶ 8-9; AA121-181),
Arbitrator Maas rejected Twitter's arguments and issued a Partial Final Award
holding that Twitter's DRA required Twitter to abide by the JAMS Rules and pay
the arbitration fees invoiced to it by JAMS.  AA185-186.  In his Partial Final
Award, Arbitrator Maas found that:

> Twitter employees . . . are required to sign the DRA
> electronically as a condition of employment even though they
> may opt out of its applicability if they choose to do so.  The
> DRA, which contains mandatory arbitration language in
> Section 1, therefore constitutes 'an <u>agreement</u> . . . required as a
> condition of employment' within the meaning of JAMS Rule
> 31(c).

AA186 (emphasis in original).

After considering and rejecting Twitter's argument that the DRA mandates
that arbitral fees be split evenly between Twitter and the employees, Arbitrator
Maas definitively held that "Respondent Twitter, Inc., and Respondent X Holdings
I, Inc. (as Twitter's affiliate, successor, subsidiary, or parent), will be required to
pay all the JAMS fees and arbitrator fees (other than the initial case management
fee) incurred in connection with this proceeding."  AA186.

### E.     The District Court's Opinion and Order Affirms JAMS' Determination that Rule 31(c) and the Minimum Standards Apply

Despite Arbitrator Maas' ruling, Twitter maintained the same objection to
paying its share of arbitration fees in hundreds of other arbitrations, including

Petitioners'.  Accordingly, on March 21, 2024, Petitioners filed a Petition to Compel Arbitration in the Southern District of New York to seek an order compelling Twitter to arbitrate "in accordance with the terms [of the DRA]," including paying the forum fees required by the rules Twitter selected to govern those arbitrations, and by which it contractually agreed to abide.  AA109.

Petitioners argued below that Twitter should be collaterally estopped from denying that the DRA requires it to proceed under the JAMS Employment Rules and Minimum Standards that it incorporated into the DRA.  Petitioners further contended that JAMS' interpretation of its own rules, and Arbitrator Maas's Partial Final Award reaching the same conclusion, was both correct and not reviewable by a court given the delegation clause of the DRA.  AA224 (DRA § 1) (defining covered disputes to include "without limitation, disputes arising out of or relating to interpretation or application of this Agreement").  Twitter argued that, although its flat refusal to pay the fees invoiced to it prevented individual arbitrators from ruling on its purported construction of the fee-apportionment clause, only the individual arbitrator could make such a determination.  Twitter further argued that the Minimum Standards and Rule 31(c) did not apply because, even though employees were required to sign the DRA in order to obtain employment at Twitter, the employees could have opted out of arbitration by returning a form within 30 days of signing the DRA.  Following full briefing and oral argument, the

16

District Court issued its Order on July 11, 2024.

The District Court determined that both parties agreed that the final decision regarding fee apportionment "must be resolved by an individual arbitrator." SPA10.  The court then addressed the questions of (1) whether the court could grant Petitioners' request for an order compelling arbitration and requiring Twitter to pay ongoing arbitration fees until an individual arbitrator ruled otherwise, and (2) whether Twitter's arguments regarding the DRA's fee apportionment clause were meritorious.

The court determined that the DRA incorporated JAMS' rules and procedures by reference, including those rules authorizing JAMS to resolve disputes on an interim basis before an individual arbitrator is appointed.  The incorporated rules included JAMS' Minimum Standards, which "expressly delegate to JAMS the authority to make an initial assessment of whether the Minimum Standards are being complied with."  SPA12-13.  Moreover, the court found that the Minimum Standards "clearly impl[y] that interim fee determinations – or at least those relating to the Minimum Standards – will be made by JAMS in the first instance, and then later reviewed by an individual arbitrator or court." SPA12.  "The Court therefore rejects Twitter's argument that no one can require Twitter to pay fees up until an individual arbitrator has been given a chance to rule on the question."  SPA14.

17

Further, procedural questions such as the applicability of JAMS Minimum Standards to a particular arbitration or disputes over the apportionment of arbitration fees "are generally matters for the arbitrator, and not for the court, to resolve."  SPA16 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002)).  Where JAMS' General Counsel is effectively "standing in the shoes of the individual arbitrator until one has ruled to the contrary," a court has little authority to second guess or review those decisions.  SPA17.  Nevertheless, the court thoroughly addressed the merits of Twitter's argument that the fee-apportionment clause of the DRA clearly directs that fees be split in a particular manner that supersedes the Minimum Standards and Rule 31(c), and that those rules did not apply in any event.

*First*, the District Court determined that the Minimum Standards and JAMS Rule 31(c) apply to Twitter's DRA.  Those rules apply to "arbitrations based on pre-dispute agreements that are required as a condition of employment" and where "an Arbitration is based on a clause or agreement that is required as a condition of employment."  SPA18 (quoting Minimum Standards, p.1).  Twitter argued that the DRA provides for an opt out window of 30 days after signature and that therefore "[a]rbitration is not a mandatory condition of Employee's employment at the Company."  SPA18-19.  Upon close review of the JAMS rules and policies, which were incorporated into the DRA by reference, the court determined that the natural

18

reading of the rules focuses on whether a clause or agreement was required as a condition of employment, not whether arbitration was required as a condition of employment. SPA18. "Rather, the condition of employment is an agreement itself," not whether "an Arbitration…is required as a condition of employment." SPA20. The court also noted that this straightforward interpretation of the language in both the Minimum Standards and JAMS' Rule 31(c) may seem to be a distinction without a difference, but further reasoned that it was certainly possible that JAMS could have based these rules on policy considerations related to information suggesting that employees, like consumers, rarely understand and opt out of contracts they are required to sign. SPA21. The court did not reach any conclusions as to why, in fact, JAMS had fashioned its rules as it did.

*Second*, the court addressed Twitter's argument that, even if the Minimum Standards and Rule 31(c) did apply, the fee apportionment clause of the DRA superseded those rules and required an equal split between a claimant-employee and Twitter. Both parties agreed that New York state law applied. The court found that New York law does not mandate an equal split or expressly require Twitter to pay all fees. Twitter argued that the word "apportioned" means that the fees must be split 50-50, citing to several dictionary definitions. The court found that those definitions did not suggest a 50-50 split, and that definitions of "apportion" in the same dictionaries refer to allocating the "proper portions" or

19

"just proportion," rather than dictating any numerical outcome. SPA22. Moreover, ample case law interpreting contracts addressing payment of fees and costs likewise did not find similar terms to require an equal split between two parties. Incorporating the Minimum Standards into the DRA would not render the fee apportionment clause superfluous, even if all ongoing fees must be apportioned to Twitter, where the possibility remained that the case initiation fee could be apportioned to the employee, or where an express exception in the Minimum Standards applied (for example, where an employee individually negotiated the arbitration agreement). The fee apportionment clause therefore still acted to provide the arbitrator with authority to allocate fees within those parameters or exceptions. SPA23.

Accordingly, the District Court granted the Petition to compel arbitration and ordered "Twitter to pay all ongoing arbitration fees for petitioners' claims unless and until the individual arbitrator in each of petitioners' respective arbitrations rules to the contrary." SPA24.

## **STANDARD OF REVIEW**

Petitioners agree that the trial court's order to compel arbitration falls under the *de novo* standard of review. *See Doctor's Assocs., Inc. v. Distajo,* 66 F.3d 438, 444 (2d Cir. 1995).

20

## SUMMARY OF ARGUMENT

The District Court found that Twitter's arbitration agreement incorporated JAMS' rules and procedures, which delegated to JAMS the authority to determine whether the JAMS Minimum Standards and Rule 31(c) applied to Petitioners, pending a later determination by an individual arbitrator. This finding is dispositive in this case, where the parties' arbitration agreement delegates questions of the interpretation and applicability of the agreement to the arbitrator, and courts have routinely found that procedural matters such as fees are presumptively for the arbitrator to decide, not a reviewing court.

The District Court further addressed Twitter's arguments that, notwithstanding Twitter's selection of the JAMS Employment Rules and policies, Twitter did not intend for the JAMS Minimum Standards or Rule 31(c) to apply to *any* arbitration under Twitter's DRA, even though Twitter required all its employees to sign the DRA as a condition of employment through its automated offer and onboarding documents process. The District Court correctly found that the plain text of the specific rules at issue clearly applied where an employee was required to sign an arbitration agreement as a condition of employment, not whether arbitration itself was required as a condition of employment. SPA21. This interpretation was one dictated by a straightforward analysis and application of the JAMS rules incorporated into the DRA, and did not depend on whether the

21

DRA was an adhesive contract for purposes of an unconscionability analysis. Moreover, the JAMS Rules provided for the JAMS administrator to make initial determinations regarding the applicability of the Minimum Standards, as JAMS's delegated administrator, the General Counsel, did in Petitioners' cases. SPA12-14.

Next, the District Court rejected Twitter's argument that Section 6 of the DRA conflicts with or supersedes JAMS' rules and procedures, where the DRA merely provides that fees should be "apportioned" pursuant to New York state law. As the District Court, and Arbitrator Maas, found, Twitter identified no authority under New York law or in the definitions of the term "apportion" that mandates any particular fee split between the claimant-employee and the respondent-employer. In the absence of any decisional authority or contrary meaning, the District Court correctly determined that JAMS' more specific rules and procedures governed over Section 6's general delegation of authority to address fee disputes. SPA12-14.

Last, a court has authority under Section 4 of the FAA to compel a party to arbitration in accordance with the terms of the party's arbitration agreement, including complying with determinations made by the arbitration administrator under the rules and procedures proscribed by that agreement. In this case, JAMS determined that its Minimum Standards and Rule 31(c) applied such that Twitter was required to pay arbitration fees, other than the initial filing fee paid by

22

Petitioners. AA83. Accordingly, Twitter can be compelled under the FAA to arbitrate and to comply with JAMS' orders and directives, subject to any later determinations regarding fee apportionment made by the individual arbitrators once appointed and compensated.

## **ARGUMENT**

"A party aggrieved by the . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 USC § 4. "[P]rior to compelling arbitration, the district court must first determine two threshold issues that are governed by state rather than federal law: (1) Did the parties enter into a contractually valid arbitration agreement? and (2) If so, does the parties' dispute fall within the scope of the arbitration agreement?" *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003). If the answer to those questions is yes and the arbitration agreement is valid and applicable – and it is – then the Court must compel arbitration "in accordance with the terms thereof." 9 U.S.C. § 4.

In this case, there is no dispute that the DRA is a valid arbitration agreement covering the claims Petitioners pled in their arbitration demands. SPA8. Twitter has halted the arbitrations by refusing to pay its share of the arbitration fees and has thus refused to arbitrate. Accordingly, the issue for this Court to decide is

23

whether the District Court erred when it found that the DRA requires Twitter to abide by JAMS' Rules and Minimum Standards, and whether the District Court therefore correctly compelled "arbitration in accordance with the terms" of the parties' agreement by directing Twitter to abide by those rules in arbitration with Petitioners.  9 U.S.C. § 4.

Twitter contends that, under the FAA, a court cannot decide how fees should be apportioned pursuant to the DRA, which it argues the DRA exclusively delegates to an individual arbitrator.  Yet that is exactly what Twitter asks this Court to decide, in presenting the Court with the question of whether the DRA's fee apportionment clause conflicts with JAMS' Employment Rules and Minimum Standards, an issue which JAMS has already addressed.  Appellants' Brief, p.8 at ¶1.  Both JAMS' General Counsel – the entity vested with "the authority and duties of JAMS" – and a JAMS arbitrator have already determined that Twitter's position that Section 6 of the DRA requires a 50-50 apportionment of fees in these cases is incorrect under the JAMS Rules and Minimum Standards incorporated into the DRA and under applicable law (here, New York state law and/or the FAA).  Yet Twitter refuses to abide by these decisions and instead insists that the only way for arbitrations to proceed is for Petitioners and JAMS to accept Twitter's unilateral interpretation of the fee allocation clause.

JAMS correctly interpreted its own rules regarding the authority delegated to

24

JAMS pursuant to the DRA, and its determination is a procedural matter that this Court cannot review. However, the District Court correctly compelled the parties to arbitration in accordance with the DRA, which includes the parties' grant of authority to JAMS to determine procedural issues regarding administration of the arbitration such as the initial allocation of and invoicing of fees. SPA23.

## A. The District Court Correctly Found that the DRA and JAMS' Rules and Procedures Delegated Authority to JAMS to Determine the Initial Applicability of the Minimum Standards.

Twitter contends that the District Court lacked the authority to compel arbitration in accordance with JAMS' interim determination on fee allocation, where Section 6 of the DRA provides that an individual arbitrator will ultimately determine fee apportionment. That is, Twitter argues that Section 6 requires that an individual arbitrator decide "any" disputes regarding fee apportionment, and that JAMS has no ability to make a determination regarding fees, even on an interim basis. Petitioners agree that the individual arbitrator appointed in each case has the authority to make any ultimate determinations regarding fee apportionment, including in entering any final award. In addition to this delegation to the arbitrator for the ultimate fee determination, the DRA provides for – and indeed mandates – rules and procedures regarding the determination of procedural issues that require resolution before an arbitrator is able to adjudicate them.

Under the JAMS rules and procedures incorporated into the DRA, the

25

parties agreed that "the authority and duties of JAMS…shall be carried out by the
JAMS National Arbitration Committee ('NAC') or the office of JAMS General
Counsel or their designees." JAMS Employment Rule 1(c). The JAMS Rules vest
JAMS with considerable authority over certain procedural and administrative
matters related to the arbitration, as set forth in Rule 6 ("JAMS may
convene…administrative conferences to discuss any procedural matter relating to
the administration of the Arbitration"), which includes issuing invoices pursuant to
the applicable fee schedule (here, the fee apportionment set forth in the Minimum
Standards and Rule 31(c)). JAMS Employment Rule 5(b). For example, the
JAMS rules and procedures vest JAMS with the authority to resolve disputes
concerning the appointment of Arbitrators and removal of a challenged Arbitrator,
among other duties and authority. JAMS Employment Rules 11and 15; *see supra*
section B, pp.11-12.

The DRA further provides JAMS the authority to determine whether the
Minimum Standards apply to a particular proceeding and if that proceeding
complies with those standards. This includes granting to JAMS the authority to
assess whether the standards are met by conducting "a facial review of the clause
or procedure." Minimum Standards, p.4. JAMS further provides that, "if a factual
inquiry is required, … it must be conducted by an arbitrator or court." *Ibid*.

Accordingly, the DRA incorporates specific, detailed authority and

procedures for JAMS to make determinations regarding procedural and administrative matters, including "an interim allocation of fee responsibility until an individual arbitrator has ruled." SPA10. The District Court correctly determined that "[t]he JAMS Rules and Minimum Standards, which are incorporated into the DRA, contemplate that JAMS as an organization will have the power to make an initial ruling on this dispute." SPA12. In addition to JAMS' authority to resolve disputes about application of the rules prior to the arbitrator's appointment, as evidenced by Rule 11 regarding the appointment of arbitrators, the DRA and the Minimum Standards "expressly delegate to JAMS the authority to make an initial assessment of whether the Minimum Standards are being complied with." SPA12-13. The DRA incorporated these specific procedures and the allocation of duties and authority to JAMS, which JAMS exercised here. Twitter's continued insistence that JAMS acted *ultra vires* and outside the scope of the DRA is incorrect.

The District Court correctly found the Minimum Standards "grants JAMS the authority to do precisely what happened here: make an initial determination about whether the Minimum Standards apply." SPA13. The Minimum Standards clearly imply that interim fee determinations that relate to the Minimum Standards will be made by JAMS as an initial matter, subject to later review by an individual arbitrator or court. That Twitter disagrees with JAMS' determination does not

27

mean that JAMS acted without authority – authority that the DRA expressly

provides for through adoption of the JAMS rules and procedures.  *See Am. Exp.*

*Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("[C]ourts must rigorously

enforce arbitration agreements according to their terms, including terms that

specify with whom the parties choose to arbitrate their disputes, and the rules

under which that arbitration will be conducted.") (internal quotations and citations

omitted).

The JAMS rules and procedures that were incorporated by reference into the

DRA are entirely consistent with the fee apportionment clause of Section 6 of the

DRA, which provides that an individual arbitrator shall make the decision

regarding ultimate fee apportionment.  AA225 (DRA § 6).  JAMS' specific

policies embodied in the Minimum Standards apply to its initial determination

regarding the applicability of the Minimum Standards based upon JAMS' facial

review of the arbitration agreement, subject to further review by the individual

arbitrator once appointed.  JAMS' General Counsel issued a reasoned

determination in a formal letter addressing Twitter's objections to the application

of the Minimum Standards, and Arbitrator Maas in the *Zhang* arbitration affirmed

that determination.  AA83; AA186.  Significantly, the JAMS General Counsel

letter does not purport to make a final determination on the applicability of the

Minimum Standards and its effect on the fee allocation in a particular matter –

28

instead, JAMS merely made an initial determination that Twitter must pay ongoing arbitration fees, but invited Twitter to direct its arguments to the individual arbitrator once appointed. Twitter got what it bargained for pursuant to the rules and procedures it agreed to, and now cannot be heard to complain, particularly where Twitter refuses to pay the fees that would allow it to obtain an ultimate determination from an individual arbitrator. *Eliasieh v. Legally Mine, LLC*, No. 18-CV-03622-JSC, 2020 WL 1929244, at *4 (N.D. Cal. Apr. 21, 2020) (the defendant was bound to follow AAA's application of its rules, including AAA's determination that Consumer Rules and fee allocation to the defendant applied).

Twitter contends that the fee apportionment clause in the DRA is more specific than the incorporated JAMS rules and procedures, and therefore controls. Under New York law, a contract should be read to give effect to all of its provisions. *See Weiss v. Weiss*, 52 N.Y.2d 170, 174 (1981) ("[T]he general principle is that an agreement, where possible, should be read as a whole so as to give each section meaning."). Moreover, the general-specific canon only applies where two provisions appear to contradict and a court must determine which controls a particular issue, or where it "appears from the whole agreement that the parties' purpose was directed solely toward the matter to which the specific words or clause relate." *Aramony v. United Way of Am.*, 254 F.3d 403, 414 (2d Cir. 2001) (citing 11 Richard A. Lord, *Williston on Contracts* § 32:10, at 449 (4th ed.

29

1999).

Here, as Judge Rakoff and Arbitrator Maas each found, there is no contradiction between Section 6 of the DRA (which provides that the arbitrator will apportion the fees under New York law) and the DRA's adoption of the JAMS Rules (which provide for *how* the arbitrator will apportion such fees: equally where the arbitration is not based on a clause or agreement required as a condition of employment, and almost entirely to the employer where it is). SPA12; AA185. Moreover, the specific policies and procedures relating to JAMS' authority prior to the installment of a duly appointed and compensated arbitrator is far more specific and detailed than Section 6 of the DRA, which merely underscores the individual arbitrator's authority to make final determinations regarding fee allocations. In contrast, the JAMS rules and procedures outline JAMS' authority to invoice parties and determine initial fee allocations to effectuate the administration of the arbitrations where no arbitrator has been appointed or engaged. Accordingly, the District Court was correct in interpreting the DRA's delegation of authority to JAMS to make an initial, interim ruling on the dispute over fee invoices and allocations. SPA12-14.

Moreover, as discussed in section C.2, *infra* pp.44-48, the fee apportionment clause of Section 6 of the DRA is readily harmonized with and should be read together with all of the DRA, including the incorporated JAMS rules and

30

procedures.  *See  This Is Me, Inc. v. Taylor*, 157 F.3d 139, 143 (2d Cir. 1998)

("[A]ll writings forming part of a single transaction are to be read together.").

Twitter relies on a case in which one district court found that a provision

explicitly requiring a 50-50 split of fees controlled over AAA Employment Rules.

*Goobich v. Excelligence Learning Corp.*, No. 19-cv-6771, 2020 WL 5593011, at

*3 (N.D. Cal. Sept. 18, 2020).  However, the agreement at issue in *Goobich*

expressly mandated an equal split of the fees, and therefore contradicted and

overrode the AAA Employment Rules, whereas the fee apportionment provision in

the DRA does not require any particular split and therefore is entirely consistent

with JAMS' Rules.  *Ibid.*; *see, e.g., Lifescan, Inc. v. Premier Diabetic Servs., Inc.*

363 F.3d 1010, 1012 (9th Cir. 2004) (authority to "apportion" included authority to

require one party to advance 100% of the fees); *Benedict P. Morelli and Assocs.,*

*P.C. v. Shainwald*, 49 A.D.3d 476, 476 (2008) (arbitrator could "apportion"

arbitration fees and expense between the parties "as they found appropriate" in

order to "achieve a just result"); *Delano v. Mastec, Inc.*, No. 8:10-CV-320-T-

27MAP, 2010 WL 4809081, at *6 (M.D. Fla. Nov. 18, 2010) ("provision that

arbitrator and arbitration fees 'will be apportioned between the parties by the

Arbitrator in accordance…with applicable law' [] is not informative as to the likely

allocation of arbitration fees.").  Moreover, as the District Court found, the JAMS

rules and procedures incorporated into the DRA are far more specific regarding

31

how disputes regarding fee allocation and invoicing are to be initially resolved prior to the appointment of the arbitrator than the general authority of the arbitrator noted in Section 6 of the DRA.  SPA14.

The Court's task is to review the actual DRA agreed to by the parties in this case, not an arbitration agreement that Twitter could have drafted but did not.  In this case, the DRA delegated certain procedural and administrative authority to JAMS for initial determination, including the applicability of the Minimum Standards.  Twitter is free to seek a final determination from an individual arbitrator regarding whether the Minimum Standards should apply and what the appropriate fee apportionment should be – as Zhang did with Arbitrator Maas. What Twitter cannot do is refuse to arbitrate according to the DRA by refusing to comply with decisions of JAMS and asking this Court to substitute its own judgment.[4]

### B.    JAMS' Determination Regarding Procedural Issues Related to the Arbitration is Not Reviewable.

Twitter contends that JAMS incorrectly interpreted and applied its own rules regarding application of the Minimum Standards, JAMS Rule 31(c), and JAMS'

---

[4] Twitter insists that it is "ready and willing to proceed with those arbitrations" if the Petitioners will pay half the fees.  Appellants' Brief, p.2.  But Twitter's DRA required it to arbitrate regardless, and the only question for this Court is whether the District Court correctly compelled it to abide by the DRA. Twitter's willingness to arbitrate on different terms is irrelevant.

authority to administer arbitrations and resolve certain disputes before an arbitrator is appointed and engaged. Arbitration associations are the masters of their own rules, and parties cannot ask courts to find that an arbitration association was wrong about their rules' meaning and application. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002); *Giordano v. Sparrow Healthcare, LLC*, No. 6:21-CV-1832, 2022 WL 3597084, at *2 (M.D. Fla. May 13, 2022); *Billie v. Coverall N. Am.*, 594 F. Supp. 3d 479, 488 (D. Conn. 2022), *vacated and remanded sub nom. Billie v. Coverall N. Am. Inc*., No. 22-718-CV, 2023 WL 2487334 (2d Cir. Mar. 14, 2023), and *vacated and remanded sub nom. Billie v. Coverall N. Am. Inc*., No. 22-718-CV, 2023 WL 2531396 (2d Cir. Mar. 15, 2023)

"[P]rocedural' questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Howsam*, 537 U.S. at 84 (emphasis in original) (internal quotations and citation omitted). Courts have routinely held that the apportionment and payment of arbitration fees are among the procedural issues that a court should not review under the FAA. *Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 887 (5th Cir. 2009) ("The arbitrators are within their discretion to ask one or the other party to pay the entire fee, and tax the fee as part of the award…."); *Lifescan,* 363 F.3d at 1012-13 (holding district court erred in second-guessing arbitrator's apportionment of 100% of fees to one party where the AAA

33

rules, incorporated into the parties' arbitration agreement, granted arbitrators discretion).

Deference to an arbitral determination regarding the allocation of fees is required by the FAA and controlling Supreme Court authority. Twitter's request that this Court review that arbitral decision on a procedural issue "is exactly the type of collateral attack that modern arbitration law aims to avoid." *Greco v. Uber Techs., Inc.*, No. 4:20-CV-02698, 2020 WL 5628966, at *4 (N.D. Cal. Sept. 3, 2020). As the court in *Greco* observed, "[t]he AAA is in a far better position to know its own rules and to exercise discretion according to those rules. . . . That [the drafting party] does not think the outcome fair… is of no import—[it] agreed to the rules that allow that outcome." *Ibid.*

Here, Twitter selected JAMS as the arbitration provider and incorporated the JAMS Employment Rules and policies into the DRA. Those rules and policies provide that JAMS is vested with the authority to resolve disputes regarding application of its Minimum Standards, invoicing of fees, and other procedural matters. Not only did the DRA delegate this authority to JAMS, but here JAMS further notified Twitter that it is free to take up the issue regarding ultimate fee apportionment with each individual arbitrator. AA83. Twitter's argument that JAMS usurped the authority delegated to an arbitrator – who cannot be appointed due to Twitter's failure to comply with JAMS' decision – is both incorrect and

34

unreviewable by a court.

Faced with recalcitrant parties who are unhappy with an arbitration provider's application of its rules, despite having selected those rules in a bargained-for agreement, courts have rejected the same arguments Twitter advances here. In *Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355, 1363 (11th Cir. 2023), the parties' arbitration agreement selected AAA's rules, including the AAA's Consumer Arbitration Rules. As with JAMS' Employment Rules and Minimum Standards, the AAA Consumer Arbitration Rules delegate determinations regarding whether an arbitration provision complies with AAA's policies to the AAA administrator in the first instance. Those rules set forth the authority and procedures regarding AAA's review of an arbitration clause for compliance with its policies as an initial matter before an arbitrator is appointed. The Eleventh Circuit found that AAA's rules "make clear that the determination whether a party has complied with the AAA's policies is an administrative decision that can and should be made by the AAA before it refers the case to an arbitrator." *Id*. at 1364.

The Third Circuit reached a similar conclusion in a case where a company challenged the AAA's determination that the AAA Consumer Arbitration Rules applied to require certain standards, which the arbitration agreement purported to abrogate through more specific and restrictive provisions. There, the arbitration

provision incorporated AAA rules by specifying that "the arbitration will be conducted before a single arbitrator in accordance with the rules of the [AAA]." *Hernandez v. MicroBilt Corp.*, 88 F.4th 215, 216 (3d Cir. 2023). Even though the arbitration agreement in that case did not expressly select and incorporate the AAA Consumer Arbitration Rules, AAA determined that those rules applied to the matter and that any provisions purporting to alter the standards conflicted with those rules and must be waived. *Id.* at 217. The company objected to this decision because it had been made by an AAA administrator, not an arbitrator. In court, the company argued that the AAA administrator improperly resolved an issue that had been delegated to an arbitrator and that the AAA's application of the Consumer Due Process Protocol was unreasonable. The Court rejected these arguments, finding that the arbitration agreement, in selecting the AAA forum and its rules, provided for AAA administrators to exercise the authority to determine how the Consumer Due Process Protocol applied in the case. In incorporating the AAA rules into the arbitration agreement, the parties agreed to permit "administrators to apply the Protocol." *Id.* at 219. "Because arbitration is a creature of contract, the parties were free to allow administrators to exercise this power," and the Court lacks "authority to rewrite their agreement." *Ibid.*

The Seventh Circuit's decision in *Wallrich v. Samsung Electronics America, Inc.*, 106 F.4th 609 (7th Cir. 2024) is in accord with these principles. There, the

arbitration agreement specified that arbitration would be conducted according to the AAA rules, which provide the AAA with discretion to apply its rules regarding arbitration fees, including the initial allocation of fees among parties if the AAA determined that 25 or more "similar claims" for arbitration were filed. *Id.* at 613. Having incorporated the AAA rules, "the parties thus bargained for AAA's discretion over the payment of administrative filing fees, including the consequences that would stem from a party's refusal to pay those fees." *Id*. at 620. The Seventh Circuit held that a court could not review the AAA's consideration of the dispute and exercise of discretion in requiring the company to pay its share of arbitration fees and in terminating the dispute after the company refused to pay those fees. *Ibid*. "[A]ll the law requires is that the parties arbitrate according to the terms of their agreement." *Id.* at 621. Where the agreement "delegated fee issues to the procedures and rules of the AAA," and the AAA applied those rules, the parties must accept the consequences. *Id*. at 621-22.

Twitter's "real gripe is with the merits of [the arbitration provider's] administrative decision." *Hernandez*, 88 F.4th at 220. However, the Court does not have the authority to review that decision. This is particularly true where the DRA's scope requires arbitration of all "disputes arising out of or relating to interpretation or application of this Agreement." AA224 (DRA § 1).

Twitter attempts to create an artificial distinction between the authority of

JAMS to apply its rules and procedures and the individual arbitrator's authority to ultimately decide the case, including any fee apportionment dispute. Twitter's arguments regarding the authority of JAMS as compared to an individual arbitrator is a distinction without a difference given the posture of the cases. Here, JAMS' decision was to require Twitter to pay ongoing arbitration fees, *subject to the arbitrator's* ultimate decision regarding fee apportionment. AA83. Accordingly, it is clear that it is wholly unnecessary and inappropriate for a court to review JAMS' administrative determination requiring Twitter to pay the fees as an initial matter.

### C. JAMS' Application of the Minimum Standards and Rule 31(c) was Correct.

Even assuming a court has the authority to review the merits of JAMS' (and Arbitrator Maas's) determination that Rule 31(c) and the Minimum Standards apply, they are clearly correct, as the District Court found. SPA24.

### 1. JAMS Rule 31(c) and Minimum Standards Apply to the DRA, Which Petitioners Were Required to Execute to Obtain Employment.

JAMS' General Counsel, Arbitrator Maas, and the District Court all determined that JAMS Employment Rule 31(c) and the Minimum Standards apply to Petitioners. That is because a faithful application of those rules makes clear that they apply where "an Arbitration is based on **a clause or agreement** that is

required as a condition of employment," and where "an arbitration is based on **a clause or agreement** that is required as a condition of employment."  JAMS Employment Rule 31(c); Minimum Standards, ¶ B (emphases added).  Twitter instead focuses on whether "arbitration …was a condition of employment."  Appellant's Brief, p.38.  In effect, Twitter asks the Court to excise the actual language of these provisions.

As the District Court found, "[a] close reading of the Minimum Standards and JAMS Rule 31(c) makes clear that this opt-out right does not remove the DRA from the rules."  SPA19.[5]  "[T]he plain text of the JAMS Rules" makes clear that "[i]f an employee is required to sign an agreement containing an arbitration clause as a condition of employment, JAMS Rule 31(c) and the Minimum Standards apply, even if the employee has the opportunity to opt out of arbitration."  SPA 21.  The court reasoned that treating the phrase "a clause or agreement that is required as a condition of employment" as one unified phrase is "by far" the most natural reading.  SPA19.  Twitter's proffered reading, that "Arbitration" is modified by "is required as a condition of employment" does not afford the language the appropriate meaning.  Put another way, the employee is not required to agree to

---

[5] The District Court's analysis focused on the text of JAMS Rule 31(c), "although the language of both provisions appears substantively identical."  SPA 19, fn6.

"an Arbitration" as a "condition of employment," the employee is required to execute the agreement itself as a condition of employment. To adopt Twitter's interpretation would be to excise the intervening phrase "based on a pre-dispute clause or agreement," rendering it superfluous. SPA20.

The District Court's analysis is consistent with that of Arbitrator Maas, who similarly determined that, even if an employee may opt out of the DRA's applicability, the employee is "required to sign the DRA electronically as a condition of employment." AA186. "The DRA, which contains mandatory arbitration language in Section 1, therefore constitutes '**an agreement**…required as a condition of employment" within the meaning of JAMS Rule 31(c)." AA186 (emphasis in original).

The cases Twitter relies on are not on point and have no bearing on the interpretation and application of the JAMS rules and procedures. Both *Simeon v. Domino's Pizza LLC*, No. 17CV5550, 2019 WL 7882143 (E.D.N.Y. Feb. 6, 2019) and *Rodriguez v. Four Seasons Hotels, Ltd.*, No. 09 CIV 2864, 2009 WL 2001328 (S.D.N.Y. July 10, 2009) involved unconscionability challenges, in which the question was whether **arbitration** (not the agreement itself) was mandatory. Although Twitter asserts that the court in *Simeon* held that "[b]ecause of the opt-out mechanism, the agreement was not a 'mandatory arbitration provision,'" (Appellant's Brief pp.35-36), that is flatly untrue. *Simeon* **expressly** recited that

40

"Simeon entered into an Arbitration Agreement with Domino's as a condition of his employment." *Simeon*, 2019 WL 7882143 at *4. The portion of the case Twitter misquotes states that "**dispute resolution by arbitration** is **not** a mandatory condition of Simeon's employment." *Id*. at *5 (emphasis added). That is a critical distinction where the issue before the court was unconscionability, not JAMS' Rules. Unconscionability is not at issue here, and JAMS can (and does) provide additional protection under its rules. *See also Marino v. CVS Health*, 698 F. Supp. 3d 689, 695 (S.D.N.Y. 2023) (examining whether an arbitration agreement is adhesive so as to create procedural unconscionability); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) (same).[6]

Nor is the fact that some Twitter employees did submit opt out forms relevant here, as the JAMS rules apply where an employer requires an employee to sign *an agreement* as a condition of employment. Twitter's declarants undisputably assert that Twitter requires all employees to sign the DRA in order to

---

[6] Similarly, the other cases Twitter cites are not relevant to JAMS' interpretation of the language in Rule 31(c) and the Minimum Standards, as those cases address whether a contract was adhesive for unconscionability purposes. *See Cir. City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199–200 (9th Cir. 2002) (addressing procedural unconscionability and finding contract was not adhesive); *Melton v. Pavilion Behav. Health Sys.*, 843 F. App'x 9, 10 (7th Cir. 2021); *Young v. Refined Techs., Inc.*, No. 22-cv-1032, 2022 WL 3012536, at *5 (C.D. Cal. June 17, 2022); *Essex v. Children's Place, Inc.*, No. 15-cv-5621, 2017 WL 6000347, at *5 (D.N.J. Dec. 4, 2017).

obtain employment.  AA477, ¶¶ 3-4; SPA18 ("[A]ll Twitter employees are required to sign the DRA").

Twitter may seek to draw the Court's attention to a district court case adjudicated under New Jersey law.  In *Rosa v. X Corp.*, No. 2:23-CV-22908, 2024 WL 4903619, at *2 (D.N.J. Nov. 27, 2024), a former Twitter employee sought to file his complaint in federal court following Twitter's refusal to pay its share of arbitration fees.  In that case, the employee did not respond to Twitter's arguments regarding the applicability of JAMS Rule 31(c) and the Minimum Standards and had thereby waived any response.  *Id.* at *10-11.  As to Twitter's arguments that Section 6 of the DRA requires equal fee splitting, the court did not identify any applicable law or construe the meaning of any of the terms and, in the absence of any counterargument from the employee, simply adopted Twitter's interpretation. Further, the court did not consider any argument – as none were apparently proffered – disputing the alleged conflict between Section 6 of the DRA and JAMS rules and procedures.  Accordingly, *Rosa* is of little persuasive import here.

**2.** The DRA's Fee Apportionment Clause Does Not Conflict With JAMS Rule 31(c) and the Minimum Standards

Twitter insists that Section 6 of the DRA regarding fee apportionment requires a 50-50 split between an individual Petitioner and Twitter, such that Section 6 of the DRA is in conflict with the JAMS rules and procedures

42

incorporated by reference into the DRA. Twitter further argues that Section 6 is more specific than, and therefore supersedes, the more general JAMS rules. As the District Court found, the fee apportionment clause of the DRA is entirely consistent with JAMS' rules and procedures, which establish how fees are to be apportioned in a case such as Petitioners', while providing the arbitrator with authority and flexibility to allocate fees differently where an exception may apply. SPA23. "A contract should be interpreted in a way that reconciles all of its provisions, if possible." *Maven Techs., LLC v. Vasile*, 46 N.Y.S.3d 720, 722 (2017) (internal quotation and citation omitted); *see also Mastrobuono v. Shearson Lehman Hutton,* 514 U.S. 52, 63-64 (1995). "Effect and meaning must be given to every term of the contract ..., and reasonable effort must be made to harmonize all of its terms." *Maven*, 46 N.Y.S.3d at 722 (internal quotations and citation omitted).

The DRA requires that, "in all cases where required by law," Twitter must "pay the Arbitrator's and arbitration fees." AA225 (DRA § 6). Where applicable law does not so require, the fees "will be apportioned between the parties in accordance with…applicable law." *Ibid*. This clause provides the drafting party with flexibility by allowing the DRA to remain enforceable in the face of potential changes in state law or arbitration provider rules. However, the clause does not mandate any particular split, unless that split is required by state law.

43

Twitter did not and has not provided any evidence or authority establishing that its interpretation of the clause it drafted is required, or even suggested, by applicable law – here, New York state law.  As Arbitrator Maas and the District Court found, "the law that Twitter contends applies is silent as to the proper outcome here."  AA185; SPA12.  Twitter relies on dictionary definitions to leap to a conclusion that the "natural" starting place for apportioning fees between an employee and employer would be a 50-50 allocation.  The Oxford English Dictionary definition refers to "assigning[ing] in **proper** proportions," while Webster's New International Dictionary refers to "divid[ing] and assign[ing] in **just** proportion."  SPA22.  Both definitions reflect that "apportionment" involves an element of judgment and discretion in determining what a "proper" and "just" division of fees might be in a particular case.  As the District Court noted, "definitions of the word…refer to allocating the 'proper portions' or 'just proportion,' [] of course begs the question of what is 'proper' or 'just.'" SPA22-23.  That is, the fact that the DRA provides that fees must be apportioned "does not dictate *how* the fees should be apportioned."  SPA22 (emphasis in original).

The meaning of the word "apportion," and the lack of any "natural" mathematical formulation suggested by the term, is further supported by the case law.  *See, e.g., Lifescan,* 363 F.3d at 1012 (9th Cir. 2004) (discretion to "apportion" arbitral fees included discretion to require one party to advance 100%

44

of the fees); *Benedict*, 49 A.D.3d at 476 (arbitrator was free to "apportion the arbitration fees, expenses, and compensation between the parties as they found appropriate" in order to "achieve a just result"); *Delano*, 2010 WL 4809081, at *6 ("provision that arbitrator and arbitration fees 'will be apportioned between the parties by the Arbitrator in accordance…with applicable law' [] is not informative as to the likely allocation of arbitration fees."); *Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 933–34 (11th Cir. 2019) (where arbitration agreement provided for use of JAMS or AAA rules for conducting arbitration and that "[e]ach party must pay its own attorneys' fees and other costs of the arbitration," the provisions must be read together such that "the parties must pay their own costs as determined by that organization.") As the District Court found: "Here, invoking the Minimum Standards, JAMS apportioned the case initiation fee to petitioners and all other ongoing fees to Twitter. This allocation is entirely consistent with, **and indeed apparently mandated by**, the DRA." SPA23 (emphasis added).

Twitter could have drafted a fee provision providing for the specific split of fees that it now advocates for, such as the parties did in the cases Twitter cites. *See Goobich*, 2020 WL 5593011 at *2 (arbitration agreement provided the parties "share the costs of such arbitration equally"); *Brady v. Williams Cap. Grp., L.P.*, 14 N.Y.3d 459, 462 (2010) (same). It did not, whether due to concerns regarding administrative ease, enforceability, or otherwise. Regardless of the reason, any

45

ambiguity in the contractual terms must be construed against Twitter as the drafting party. *See 151 W. Assocs. v. Printsiples Fabric Corp.*, 61 N.Y.2d 732, 734 (1984). Given the lack of any "apportionment" of fees required by New York law, the JAMS Rules and Minimum Standards incorporated in the agreement provide the selected method of apportionment.

Twitter suggests that applicable law provides only that a claimant may alter a 50-50 allocation where the claimant can demonstrate financial hardship on an individual basis. While that may be one ground for an arbitrator to determine the fee allocation, under the JAMS Rules it is only relevant if Rule 31(c) and the Minimum Standards do not apply; where they do, and where the parties have chosen to arbitrate at JAMS, the fees are allocated to the employer, other than the initial filing fee.

Twitter further argues that applying the JAMS' rules would render Section 6 of the DRA superfluous if Twitter were required to pay all arbitration fees in each of Petitioners' cases, and further fails to recognize the DRA's distinction between cases where applicable law requires Twitter to pay all arbitration fees, on the one hand, and cases such as this, where applicable law is otherwise silent. As the District Court aptly reasoned, "even if all ongoing fees must be apportioned to the employer, this still leaves open the possibility that the case initiation fee be apportioned to the employee." SPA23. Additionally, the Minimum Standards

46

provide for exceptions where "the agreement to arbitrate was individually negotiated by the employee and employer, or if the employee was represented or advised by counsel during the negotiations." SPA23 (citing Minimum Standards, p.5). In those types of cases, the fee allocation clause would presumably provide the authority to allocate fees outside the requirements of the JAMS rules, based on a "factual inquiry…conducted by an arbitrator." Minimum Standards, p.4.

### D. The Court Had Authority to Compel Twitter to Arbitrate According to the DRA, Including to Comply With the Fee Requirements Imposed By JAMS.

Twitter contends that a court categorically cannot compel a party to pay arbitration fees, even where the arbitration agreement requires it to do so. Not so. This Court has previously noted that, under section 4 of the FAA, a district court may compel arbitration and direct a party to pay their share of arbitration fees. SPA8; *Brown v. Peregrine Enterprises, Inc.*, No. 22-2959, 2023 WL 8800728, at *4 (2d Cir. Dec. 20, 2023); *see also Levitt v. Lipper Holdings, LLC*, No. 03 CIV. 0266, 2006 WL 1330028, at *1 (S.D.N.Y. May 15, 2006) (compelling party to pay all fees invoiced by arbitration provider).

Federal courts in other jurisdictions have compelled arbitration under FAA § 4 and ordered parties to pay the required fees "and comply with any requirements imposed by the AAA." *Allemeier v. Zyppah, Inc.*, No. CV 18-7437, 2018 WL 6038340, at *4 (C.D. Cal. Sept. 21, 2018); *Pre-Paid Legal Servs., Inc. v. Cahill*,

47

786 F.3d 1287 (10th Cir. 2015) (affirming district court's order compelling the defendant to pay arbitration fees); *Horst Constr. Co. v. Jeffries*, No. 2011-CV-02543, 2012 WL 13018331, at *1 (E.D. Pa. Mar. 27, 2012) (granting the plaintiff's motion to stay pending arbitration and compelling the defendant to follow the dispute resolution procedures in the parties' agreement).

Twitter's reliance on *Wallrich* for support of its position that a court cannot compel a party to comply with the procedures and determinations of the arbitrator is misplaced. *Wallrich*, 106 F.4th at 620. There, the court held that, where a party failed to pay fees and the arbitration provider closed the case according to its rules, the arbitration had been concluded pursuant to the parties' agreement and the court had no authority to reopen arbitration. *Ibid.* Twitter's reliance on *Wallrich* and other cases in different procedural postures from the instant case have no bearing on the Court's authority under FAA section 4 to compel arbitration pursuant to the terms of the parties' agreement. *See, e.g., Lifescan,* 363 F.3d 1010 (after arbitration provider closed the case, finding arbitration had been "had" and completed pursuant to the parties' agreement). Here, Petitioners' arbitrations at JAMS remain open, pending Twitter's compliance with JAMS' directives.

As the Fifth Circuit found, "payment of fees seems to be a procedural condition precedent set by the [arbitration provider]," an issue that is granted to the arbitrator's discretion. *Dealer*, 588 F.3d at 887. Where the company had agreed to

48

be bound by the arbitration rules, the company's remedy was with the arbitrators pursuant to those rules.  Similarly, the Court here should not revisit JAMS' determination regarding fees pending the ultimate determination by the individual arbitrators, which "preserves the flexibility and discretion in the hands of the arbitrators, a policy end the FAA favors."  *Id*. at 888.

## CONCLUSION

For the foregoing reasons, Petitioners-Appellees respectfully request that the Court affirm the trial court's order granting Petitioners' petition to compel arbitration.

Respectfully submitted,

Dated:  January 30, 2025

By:   */s/ Akiva M. Cohen*
       Akiva Cohen
       **KAMERMAN, UNCYK,**
       **SONIKER & KLEIN P.C.**
       1700 Broadway, 16th Floor
       New York, NY 10019
       Tel: (212) 400-4930

       *Counsel for Petitioners-Appellees*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of this Circuit's Local Rule 32.1(a)(4)(A) because it contains 11,284 words, exclusive of those parts of the brief that do not count toward the length limit under Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), as it utilizes a proportionally spaced typeface, Times New Roman 14-point font.

Respectfully submitted,

Dated: January 30, 2025

By: _/s/ Akiva M. Cohen_____
    Akiva Cohen

*Counsel for Petitioners-Appellees*