# 24-1948

## In the United States Court of Appeals

### FOR THE SECOND CIRCUIT

BURGIOUS FRAZIER, JR., WAYNE KRUG, BEN PEREZ, VANESSA
SZAJNBERG, NICHOLAS TAPALANSKY, SHELLY YIP, YOSUB KIM,

*Petitioners-Appellees,*

v.

X CORP., formerly known as Twitter, Inc.,
X HOLDINGS CORP, formerly known as X Holdings I, Inc.,

*Respondents-Appellants.*

On Appeal from the United States District Court for the
Southern District of New York, No. 24-cv-2135, Hon. Jed S. Rakoff

## REPLY BRIEF OF APPELLANTS

MELISSA D. HILL
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000

MICHAEL E. KENNEALLY
JAMES D. NELSON
BRENDAN J. ANDERSON
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000

*Counsel for Respondents-Appellants*

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................. ii

Introduction ............................................................................................ 1

Argument ................................................................................................ 3

I.    The district court's authority to compel arbitration does
      not extend to resolving an arbitration fee dispute that the
      DRA assigns to the arbitrator. ........................................................ 3

      A.    The DRA expressly assigns "any" fee dispute to the
            individual arbitrator in each Petitioner's arbitration. .......... 3

      B.    The district court could not compel X Corp. to pay fees
            contrary to the terms of the DRA. ...................................... 12

II.   The district court's allocation of all ongoing fees to
      X Corp., pending a determination by an arbitrator,
      conflicts with the DRA. ................................................................ 16

      A.    The DRA was not a condition of Petitioners'
            employment. ...................................................................... 16

      B.    Requiring X Corp. to pay all ongoing fees conflicts
            with any reasonable reading of the DRA and JAMS
            rules. ................................................................................. 22

      C.    X Corp.'s arguments are properly before the Court. ........... 27

Conclusion ............................................................................................ 33

Certificate of Compliance ..................................................................... 34

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allemeier v. Zyppah, Inc.*,
  No. 18-cv-7437, 2018 WL 6038340 (C.D. Cal. Sept. 21, 2018)........... 15

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) ................................................................................ 3

*Bahoor v. Varonis Sys., Inc.*,
  152 F. Supp. 3d 1091 (N.D. Ill. 2015) ........................................... 11, 22

*Bedgood v. Wyndham Vacation Resorts, Inc.*,
  88 F.4th 1355 (11th Cir. 2023) ..................................................... 30, 31

*Benedict P. Morelli & Assocs., P.C. v. Shainwald*,
  49 A.D.3d 476 (1st Dep't 2008) ......................................................... 25

*Billie v. Coverall N. Am.*,
  594 F. Supp. 3d 479 (D. Conn. 2022) ................................................. 32

*Billie v. Coverall N. Am. Inc.*,
  No. 22-718, 2023 WL 2531396 (2d Cir. Mar. 15, 2023) ...................... 32

*Brady v. Williams Cap. Grp., L.P.*,
  928 N.E.2d 383 (N.Y. 2010) ............................................................... 22

*Brown v. Peregrine Enters., Inc.*,
  No. 22-2959, 2023 WL 8800728 (2d Cir. Dec. 20, 2023) ........ 13, 14, 29

*Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*,
  588 F.3d 884 (5th Cir. 2009) .............................................................. 30

*Delano v. Mastec, Inc.*,
  No. 10-cv-320, 2010 WL 4809081 (M.D. Fla. Nov. 18, 2010) ............. 25

*Eliasieh v. Legally Mine, LLC*,
  No. 18-cv-3622, 2020 WL 1929244 (N.D. Cal. Apr. 21, 2020) ...... 30, 31

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Freeman v. SmartPay Leasing, LLC*,
  771 F. App'x 926 (11th Cir. 2019)...................................................... 25

*Goobich v. Excelligence Learning Corp.*,
  No. 19-cv-6771, 2020 WL 5593011 (N.D. Cal. Sept. 18, 2020).......... 11

*Greco v. Uber Techs., Inc.*,
  No. 20-cv-2698, 2020 WL 5628966 (N.D. Cal. Sept. 3, 2020)............. 32

*Hernandez v. MicroBilt Corp.*,
  88 F.4th 215 (3d Cir. 2023).......................................................... 30, 31

*Holcomb v. TWR Express, Inc.*,
  11 A.D.3d 513 (2d Dep't 2004).......................................................... 21

*Horst Constr. Co. v. Jeffries*,
  No. 11-cv-2543, 2012 WL 13018331 (E.D. Pa. Mar. 27, 2012)........... 15

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002)...................................................................... 29, 30

*Lamps Plus, Inc. v. Varela*,
  587 U.S. 176 (2019).......................................................................... 3

*Levitt v. Lipper Holdings, LLC*,
  No. 03-cv-266, 2006 WL 1330028 (S.D.N.Y. May 15, 2006).............. 15

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
  363 F.3d 1010 (9th Cir. 2004)...................................................... 25, 29

*Lilly v. City of New York*,
  934 F.3d 222 (2d Cir. 2019) ............................................................. 27

*Ma v. Twitter, Inc.*,
  No. 23-cv-3301, 2025 WL 436636 (N.D. Cal. Feb. 7, 2025)
  ........................................................................................ 9, 10, 32, 33

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Marino v. CVS Health*,
698 F. Supp. 3d 689 (S.D.N.Y. 2023)..................................................20

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016)............................................................20

*Pre-Paid Legal Servs., Inc. v. Cahill*,
786 F.3d 1287 (10th Cir. 2015)..........................................................15

*Rodriguez v. Four Seasons Hotels, Ltd.*,
No. 09-cv-2864, 2009 WL 2001328 (S.D.N.Y. July 10, 2009).............20

*Rosa v. X Corp.*,
No. 23-cv-22908, 2024 WL 4903619 (D.N.J. Nov. 27, 2024) ...... *passim*

*Shell Oil Co. v. Iowa Dep't of Revenue*,
488 U.S. 19 (1988)...............................................................................25

*Simeon v. Domino's Pizza LLC*,
No. 17-cv-5550, 2019 WL 7882143 (E.D.N.Y. Feb. 6, 2019) ..............20

*Wallrich v. Samsung Elecs. Am., Inc.*,
106 F.4th 609 (7th Cir. 2024) ........................................... 12, 13, 14, 16

*Wells Fargo Advisors, LLC v. Sappington*,
884 F.3d 392 (2d Cir. 2018) ...............................................................28

**STATUTES**

9 U.S.C. § 3 ...................................................................................... 13, 29

9 U.S.C. § 4 ..................................................................................... *passim*

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

## RULES

*JAMS Employment Arbitration Rules & Procedures* (June 1, 2021),
https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/
JAMS_employment_arbitration_rules-2021.pdf

Rule 5 ............................................................................................... 6, 9

Rule 6 ................................................................................................... 8

Rule 9 ................................................................................................... 9

Rule 11 ................................................................................................. 8

Rule 31 ......................................................................................... *passim*

## OTHER AUTHORITIES

*JAMS Policy on Employment Arbitration Minimum Standards of
Procedural Fairness* (July 15, 2009), https://www.jamsadr.com/
files/Uploads/Documents/JAMS-Rules/JAMS_Employment_Min_
Stds-2009.pdf ............................................................................... 17, 19

## INTRODUCTION

The critical legal principle for this appeal is neither complicated nor disputed: The district court had no authority to grant the relief that Petitioners requested—an order compelling X Corp. to pay fees to move Petitioners' arbitrations forward—unless such an order is "in accordance with the terms of the agreement." 9 U.S.C. § 4. X Corp. has identified two independent reasons why the district court's order is not in accordance with the agreements' terms. First, that order compels X Corp. to abide by the JAMS General Counsel's attempt to resolve the parties' dispute over fees even though the agreements say that "any" dispute over fees is for someone else—the arbitrator—to decide. Second, the district court's order compels X Corp. to pay virtually all ongoing fees even though neither the DRA's fees provision nor the JAMS rules that the DRA generally adopts support imposing that obligation on X Corp.

Petitioners do not dispute on appeal that relief under 9 U.S.C. § 4 must accord with the DRA's terms. Instead, they do battle with a strawman—pretending that X Corp. interprets 9 U.S.C. § 4 as foreclosing any order compelling payment of arbitration fees, even when the parties'

1

agreement requires that payment. That has never been X Corp.'s argument. Rather, X Corp. argues that (1) the DRA does not require the disputed payment and (2) it is solely for the arbitrator, not the JAMS General Counsel, to resolve that dispute.

Petitioners also seek to dodge and revise the language of the DRA and JAMS rules and Minimum Standards. For example, they pretend that the DRA assigns only "*ultimate* determinations regarding fee apportionment" to the arbitrator. Pet'rs Br. 25 (emphasis added). But the DRA makes no such distinction. It assigns "any" dispute over fees to the arbitrator. Petitioners also disregard the language of JAMS Rule 31(c) and the Minimum Standards. That language, according to Petitioners, requires employers to pay all arbitration fees whenever an employee must "execute" or "sign" the agreement, even if the employee can simultaneously opt out of and not be bound by the agreement in any respect. Pet'rs Br. 38-39. In reality, Rule 31(c) and the Minimum Standards apply only when an employee must be bound by an arbitration agreement as a condition of employment. And Petitioners simply ignore JAMS's own default rule on fee apportionment for every agreement that (like the DRA) is not required as a condition of employment. For such agreements, Rule 31(a)

2

requires the parties to pay their own pro rata share of JAMS fees unless the contract requires a different allocation (which the contract here does not). *See* X Corp. Br. 3, 11, 41.

Petitioners' efforts to evade X Corp.'s actual arguments and the actual language of the DRA, JAMS rules, and Minimum Standards show they have no answer. They cannot establish that the district court's order compels arbitration in accordance with the terms of the parties' agreements, because it doesn't. For that fundamental reason, the order must be reversed.

## ARGUMENT

**I.  The district court's authority to compel arbitration does not extend to resolving an arbitration fee dispute that the DRA assigns to the arbitrator.**

### A.  The DRA expressly assigns "any" fee dispute to the individual arbitrator in each Petitioner's arbitration.

The district court erred in holding that it had authority to compel X Corp. to accept the JAMS General Counsel's purported resolution of the parties' fee dispute (at least on an interim basis) and pay all ongoing fees. A court may compel arbitration only according to an agreement's terms. *See, e.g.*, *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 183-84 (2019). Here, the

DRA is clear and unambiguous that "*any* disputes [regarding apportionment of fees] will be resolved by the Arbitrator." AA225 (DRA § 6) (emphasis added). Both the JAMS General Counsel and the district court acted contrary to this provision when they purported to settle a dispute over X Corp.'s responsibility for fees.

Petitioners all but ignore the relevant language of DRA § 6. Much like the district court, they attempt to rewrite the provision to read that only "ultimate" determinations must be resolved by the individual arbitrator. *See* Pet'rs Br. 6 ("Petitioners agree that the individual arbitrator appointed in each case has the authority to make any ultimate determinations regarding fee apportionment, including in entering any final award."); *id.* at 28 (referring to "ultimate" fee decisions). But DRA § 6 says the arbitrator must resolve "any" fee disputes, not just "ultimate" ones. By purporting to resolve this fee dispute, the General Counsel violated that provision, and the district court did likewise when it ordered X Corp. to accept the General Counsel's purported resolution.

And it is wrong, in any event, to say that the JAMS General Counsel did nothing more than resolve a fee dispute on an "interim" basis. JAMS never said its decision was "subject to the arbitrator's ultimate

4

decision regarding fee apportionment." Pet'rs Br. 38. Just the opposite, the General Counsel denied individual arbitrators' ultimate authority to resolve fee disputes, stating that *JAMS* had the ultimate authority even "if the arbitrator believes *JAMS* should revisit the issue." AA466 (emphasis added). In such a case, "*JAMS* will then review the issue, taking the arbitrator's position into consideration, and *will make a final determination.*" *Id.* (emphases added).

The district court dismissed this statement from JAMS as a "speculative possibility that JAMS might refuse to comply with an individual arbitrator's ruling." SPA15 n.5. But there is nothing "speculative" about JAMS's express determination that it, rather than the arbitrator, retains final authority to decide fee-sharing issues in these arbitrations. That determination conflicts with the DRA, and the General Counsel did not claim otherwise. Indeed, she stressed that JAMS makes its decisions "notwithstanding any contrary provision in the parties' arbitration agreement." AA466.

JAMS's decision is highly prejudicial to X Corp. Arbitrators rely on JAMS for assignments and would not receive those assignments if they sought to apportion fees in a way that, according to JAMS, would lead

5

the organization to "decline to administer the arbitration." AA466. If arbitrators want to ensure that their arbitrations proceed, their fee-sharing decisions must conform to those of JAMS, effectively stacking the deck. In addition to being fundamentally unfair, this arrangement flouts the DRA, which assigns the fee-sharing decision to the arbitrator alone. And so the district court—which is empowered under 9 U.S.C. § 4 to enforce only the DRA's terms—had no right to enforce JAMS's stated position under 9 U.S.C. § 4.

Petitioners attempt to evade the clear language of DRA § 6 by conflating JAMS with "the Arbitrator." Pet'rs Br. 37-38 (describing the distinction between JAMS and the arbitrator as "artificial"); *see also id.* at 33 (relying on cases addressing arbitrators' authority to justify their characterization of JAMS's authority). Even the district court conceded the difference between the two, recognizing that DRA § 6's references to "the Arbitrator" mean "the individual arbitrator appointed in each case (as opposed to JAMS as an organization)." SPA8 n.2. JAMS's Rules themselves support this distinction. *See* Rule 5(c) (referring to "the Arbitrator, once appointed"). JAMS is not "the Arbitrator"—the individual arbitrator appointed by JAMS is.

6

In an attempt to highlight that at least one "Arbitrator" has addressed their arguments, Petitioners frequently refer to the decision of Arbitrator Maas in the *Zhang* arbitration. *See, e.g.*, Pet'rs Br. 15, 22. But Arbitrator Maas is not Petitioners' arbitrator, so his decision in another claimant's distinct case (which Petitioners' counsel themselves cherry-picked, paying their share of the initial fees in that case but no other) is irrelevant.[1] The DRA requires the individual arbitrator in each arbitration to decide any fee issues. If the *Zhang* decision has relevance here, it is to show that X Corp. and the *Zhang* claimant (unlike Petitioners) were willing to arbitrate their fee dispute in accordance with the DRA by teeing up the dispute for the proper decisionmaker.

Petitioners try to justify having fee disputes resolved by someone other than the individual arbitrator based on the DRA's general incorporation of JAMS rules. On their view, "the DRA provides for—and indeed mandates—rules and procedures regarding the determination of procedural issues that require resolution before an arbitrator is able to adjudicate them." Pet'rs Br. 25. They are wrong for at least two reasons.

---

[1] Petitioners argued below that the *Zhang* arbitration had preclusive effect in this case, but the district court correctly rejected that argument. X Corp. Br. 15. Petitioners do not challenge that decision on appeal.

First, as the opening brief discussed, none of the cited rules empowers JAMS to apportion fees even on an interim basis. Nothing about the authority to "*convene* . . . administrative conferences *to discuss* any procedural matter relating to the administration of the Arbitration," Rule 6 (emphases added), or to make determinations about the appointment of an arbitrator, Rule 11(c), gives JAMS authority to resolve interim fee disputes. Although Rule 6(c) allows JAMS to "order the suspension or termination of the proceedings" if a party has "failed to pay fees or expenses in full," the Rule does not state that JAMS determines parties' respective shares of the fees if no arbitrator has been appointed. In contrast, Rule 6(b) does expressly state that "[i]f no arbitrator has yet been appointed, . . . JAMS may determine the location of the Hearing." If Rule 6(c) gave JAMS similar authority as to interim fees, it would say so as Rule 6(b) does for arbitration location.

Nor does the DRA provide JAMS "authority to determine whether the Minimum Standards apply to a particular proceeding and if that proceeding complies with those standards," as Petitioners contend without citing any DRA provision. Pet'rs Br. 26. While the DRA expressly incorporates the JAMS rules, it does not incorporate the Minimum Standards.

*See* AA225 (DRA § 5). This makes sense because, if the Minimum Standards applied and required X Corp. to pay virtually all arbitration fees in every case, as Petitioners contend, then the fee-sharing provision in the DRA would be superfluous.

In *Ma v. Twitter, Inc.*, No. 23-cv-3301, 2025 WL 436636, at \*1 (N.D. Cal. Feb. 7, 2025), a district court considering a petition to compel arbitration under the DRA purported to find authority for JAMS to make initial fee determinations in JAMS's administrative ability to "issue[] a Commencement Letter that confirms, among other things, that JAMS has received all payments required under the applicable fee schedule," and to "grant reasonable extensions of time to file a response or counterclaim." *Id.* at \*7 (citing Rules 5 and 9). This discussion in *Ma* was dicta because the court ultimately denied the petitions to compel arbitration, recognizing that it lacked authority to compel arbitration in the DRA's designated location. *See id.* at \*1. Regardless, neither rule gives JAMS authority to resolve disputes about the amount of the fees, the question the DRA squarely reserves for the arbitrator. An extension request has nothing to do with fees. And the "Commencement Letter" is purely infor-

9

mational—it simply "confirms" whether JAMS has received payments required for the arbitration to commence. It would stretch that provision beyond its meaning to say it also entitles JAMS to decide fee allocation, let alone that it entitles JAMS to override the parties' agreement. Equally unpersuasive is the *Ma* court's discussion of JAMS's ability to determine whether an arbitration should proceed based on whether it receives a signed arbitration agreement. *See Ma*, 2025 WL 436636, at *1, *7. While such a decision may ultimately result in no party having to pay fees (because the arbitration does not proceed), it is hardly the same as empowering JAMS to allocate fees, which is the role that DRA § 6 assigns to the arbitrator.

Even if these provisions gave JAMS authority to resolve fee disputes on an interim basis generally (and they do not), they would not override the DRA's specific requirement that "any" fee disputes be resolved by an individual arbitrator. Petitioners still fail to cite a single authority for the proposition that general rules from arbitral organizations can override specific provisions in parties' agreements. On the contrary, Petitioners appear to concede that specific provisions in the parties' agreement must override rules incorporated by reference if they conflict.

10

For instance, in discussing *Goobich v. Excelligence Learning Corp.*, No. 19-cv-6771, 2020 WL 5593011, at \*3 (N.D. Cal. Sept. 18, 2020), Petitioners acknowledge that an agreement that "mandated an equal split of the fees . . . contradicted and overrode the AAA Employment Rules." Pet'rs Br. 31. In other words, if an agreement mandates a "particular split" of fees, *id.*, the agreement controls—not the rules. Contrary to Petitioners' contention, the DRA does mandate a default split of fees, as discussed below. But the key point for present purposes is that Petitioners offer no justification for differentiating cases, like this one, where the agreement has a specific provision about who will decide any fee dispute, from cases like *Goobich* where the agreement has a specific provision about what the division of fees will be. *See also Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1100 (N.D. Ill. 2015) (holding that although "the parties agreed to operate under . . . JAMS rules[,] . . . any default fee provisions in the . . . JAMS rules are overridden by the express Agreement that the parties signed"). In either case, the specific provision in the parties' agreement governs over a general incorporation of JAMS rules. So even if the rules could be read as giving JAMS authority to decide fee disputes, the DRA's express reservation of all such authority for the arbitrator would govern.

11

## B.    The district court could not compel X Corp. to pay fees contrary to the terms of the DRA.

Because the DRA vests authority to allocate fees in the arbitrator alone, neither JAMS nor the district court could make that allocation. Petitioners mischaracterize X Corp.'s argument as being that "a court categorically cannot compel a party to pay arbitration fees." Pet'rs Br. 26. On the contrary, X Corp. has argued, consistent with the case law in this and other circuits, that a court may not use a motion to compel arbitration to compel payment of arbitration fees in a way that violates the parties' agreement.

That principle governs even when, as here, the arbitral organization has determined that one party is responsible for those fees and the other party files a petition under 9 U.S.C. § 4 to enforce that determination to advance the arbitration. *See Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 622 (7th Cir. 2024). Petitioners embrace *Wallrich* but only by misconstruing it. *Wallrich* is instructive because it shows that a district court may not usurp the role of the decisionmaker with exclusive authority under the arbitration agreement to resolve a fee dispute. *See id.* at 621. That is exactly what Petitioners are attempting to do here.

12

The proper course here is the one that the *Wallrich* court identified. *Id.* at 622. If JAMS decides to terminate the arbitration because it believes X Corp. must pay all fees to proceed, Petitioners may then (a) proceed in court or (b) advance the other half of fees, as JAMS has acknowledged Petitioners may do (and as Petitioners' counsel did by advancing $5,000 in the *Zhang* arbitration). AA151, AA160; AA466. But whatever Petitioners choose, X Corp. is entitled to stand on its agreement, and the district court is not entitled to "flout the parties' agreement" by holding X Corp. to a decision by a decisionmaker that under the agreement has no authority to resolve any fee dispute. 106 F.4th at 620.

This Court's decision in *Brown v. Peregrine Enterprises, Inc.*, No. 22-2959, 2023 WL 8800728 (2d Cir. Dec. 20, 2023), took a similar view in the context of a motion to lift a stay of litigation under 9 U.S.C. § 3. The Court observed that a party does not act "inconsistently with its arbitration right" by refusing to pay fees that an arbitration organization demands but that the party has no obligation to pay under its agreement. 2023 WL 8800728, at *3. By the same measure, X Corp. likewise "cannot

13

be faulted for standing on its contractual entitlements" and refusing to pay fees that the DRA does not require it to pay. *Id.*[2]

Petitioners also erroneously contend that X Corp. "has halted the arbitrations by refusing to pay its share of the arbitration fees and has thus refused to arbitrate." Pet'rs Br. 21. X Corp. is ready and willing to arbitrate—on terms that comply with the DRA. As in *Wallrich*, that is a real possibility if Petitioners prefer arbitrating to litigating. Indeed, the JAMS General Counsel explained that Petitioners are free to do what Zhang did: advance half of the fees until an individual arbitrator resolves the parties' fee dispute. AA466. Petitioners' refusal to do so is what "has halted" the arbitrations. *Brown* and *Wallrich* are clear that X Corp. does not refuse to arbitrate simply because it refuses to comply with conditions that are contrary to its agreement.

The other cases Petitioners rely on are not on point. None appear to involve any contention that requiring the payment of fees would be

---

[2] Petitioners claim that *Brown* shows that a Court may order a party to pay arbitration fees, but this Court did not do so, and the statement merely left open the possibility that the district court could "direct[] *plaintiffs* to pay their equal share" under the agreement. *Id.* at *4 (emphasis added). That statement does not support directing *X Corp.* to pay *more than its share* under the DRA.

contrary to the parties' agreement, as it is here, and some do not involve a court ordering a party to pay fees at all. In *Levitt v. Lipper Holdings, LLC*, No. 03-cv-266, 2006 WL 1330028, at \*1 (S.D.N.Y. May 15, 2006), the court ordered a party to pay fees where the party's failure to do so "had the practical effect of vacating" the court's prior order that the party had sought compelling arbitration. Here, X Corp. has not sought any such order from the district court, and its refusal is based on its contractual rights. In *Allemeier v. Zyppah, Inc.*, No. 18-cv-7437, 2018 WL 6038340, at \*3 (C.D. Cal. Sept. 21, 2018), a court similarly required a party to comply with the terms of its agreement, which did not appear to include a specific fee-apportionment provision. Finally, neither *Pre-Paid Legal Services, Inc. v. Cahill*, 786 F.3d 1287 (10th Cir. 2015), nor *Horst Construction Co. v. Jeffries*, No. 11-cv-2543, 2012 WL 13018331, at \*1 (E.D. Pa. Mar. 27, 2012), even involved a court order requiring a party to pay fees. The former affirmed an order lifting a stay of litigation after arbitration was terminated based on unpaid fees, *Pre-Paid Legal*, 786 F.3d at 1289, while the latter merely ordered the defendant to comply with arbitral procedures in the parties' agreement, *Horst Constr.*, 2012 WL 13018331, at \*1 n.1.

Here, the district court's order improperly usurps the authority of the individual arbitrators who the parties agreed would decide fee disputes. The judgment should be reversed on this basis alone. Petitioners may front half of the initial arbitration fees to allow the arbitrators to decide the fee dispute or, if they refuse, they may ask JAMS to terminate the arbitrations and pursue their claims in court. But in no event may courts use 9 U.S.C. § 4 to move arbitration forward in a manner inconsistent with the arbitration agreement. *See Wallrich*, 106 F.4th at 620.

## II.    The district court's allocation of all ongoing fees to X Corp., pending a determination by an arbitrator, conflicts with the DRA.

When Petitioners turn to the district court's interpretation of X Corp.'s responsibility for fees, their arguments similarly fall flat. They do not, and cannot, demonstrate that an optional DRA was somehow required as a condition of employment, or that the default fee-apportionment should be anything other than an equal split between X Corp. and each Petitioner.

### A.    The DRA was not a condition of Petitioners' employment.

As they did with DRA § 6, Petitioners simply ignore the language of JAMS Rule 31(c) and the Minimum Standards to argue that they apply

and require X Corp. to pay all fees until an arbitrator can reach a decision. Rule 31(c) and the Minimum Standards apply only "[i]f an Arbitration is based on a clause or agreement that is required as a condition of employment." Rule 31(c); *see Minimum Standards* ¶ B. In all other cases, the JAMS rules require the parties to share the fees pro rata, absent a contrary allocation in their agreement. Rule 31(a). As X Corp. showed in its opening brief, the DRA was not required as a condition of employment because employees could opt out of it. AA226 (DRA § 8) (emphasizing that employees may "opt out and not be subject to this Agreement" by submitting a form within 30 days of receiving the DRA).

After X Corp. filed its opening brief, another court addressed this issue and agreed with X Corp. that "the DRA was not a requirement of employment at Twitter." *Rosa v. X Corp.*, No. 23-cv-22908, 2024 WL 4903619, at \*10 (D.N.J. Nov. 27, 2024). The *Rosa* court recognized that the DRA's "opt-out period clearly denotes that it was not a required aspect of [the plaintiff's] employment to be under an arbitration agreement." *Id.* Petitioners attempt to downplay *Rosa* by asserting that the plaintiff there "waived any response" to X Corp.'s argument and that the district court did not fully consider the issue. Pet'rs Br. 42. Not so. Just

17

like Petitioners here, the *Rosa* plaintiff argued that "he had to sign the DRA initially," but the court was unconvinced. 2024 WL 4903619, at \*10. And the court explained that it was "addressing all his arguments" rather than finding them waived. *Id.* at \*11. *Rosa* is on point and persuasive.

Petitioners misquote X Corp.'s brief to portray X Corp. as arguing over whether "arbitration . . . was a condition of employment," as opposed to whether the arbitration *agreement* was a condition of employment. Pet'rs Br. 39 (claiming to quote X Corp. Br. 38). What X Corp. actually argued was that "the arbitration *agreement* was not required as a condition of employment" and "the *DRA* [was not] a condition of employment when every employee had the right to opt out." X Corp. Br. 38 (emphases added). That is plainly correct because employees could opt out of and avoid being bound by the agreement and still become and remain employed. AA226 (DRA § 8). Petitioners have no support for the notion that an agreement is required of an employee who need not be bound by it.

Petitioners try to salvage their position by changing the wording of Rule 31(c) and the Minimum Standards. They describe Rule 31(c) and the Minimum Standards as applying whenever an employee is required to "sign" or "execute" an agreement. Pet'rs Br. 40. But that is not what the

18

Rule or Minimum Standards say. They apply only when an "arbitration clause or agreement" is "required," Rule 31(c); *Minimum Standards* ¶ B—*i.e.*, when the employee must be bound by the clause or agreement—and so don't apply to the DRA. *Rosa*, 2024 WL 4903619, at \*10.

Petitioners also inaccurately suggest that employees could only opt out within "30 days of signing" the DRA, when they could in fact opt out any time within 30 days of receipt. *Compare* Pet'rs Br. 16, *with* AA226 (DRA § 8). This distinction refutes Petitioners' theory that they at least temporarily had to be bound by the DRA. On the contrary, Petitioners could have opted out of the DRA simultaneously with (or before) signing of the DRA, and thus never have been bound even momentarily. Nor do Petitioners respond to the language in the DRA that states if an employee opts out within the allotted time, they are not bound to the DRA as to any dispute but instead "may pursue available legal remedies without regard to [the DRA]." AA226 (DRA § 8).

Petitioners do not deny that the district court neither cited nor distinguished X Corp.'s many cases holding that opt-out provisions make arbitration agreements non-mandatory. Petitioners argue (at 17) that

19

these cases held only that arbitration (not the agreement) was non-mandatory, but that is untrue. Several cases refer to the arbitration agreement as not required because the opt-out provision rendered the agreement either non-mandatory or not a contract of adhesion. *See, e.g.*, *Marino v. CVS Health*, 698 F. Supp. 3d 689, 695 (S.D.N.Y. 2023) (opt-out provision "negate[d] any suggestion plaintiff was forced to enter into the Arbitration *Agreement*" (emphasis added)); *Rodriguez v. Four Seasons Hotels, Ltd.*, No. 09-cv-2864, 2009 WL 2001328, at *4 (S.D.N.Y. July 10, 2009) (plaintiff "was not required to submit to the offending mediation/arbitration *provisions* as a condition of employment, but was provided with the choice of opting-out" (emphasis added)); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) ("[A]n arbitration *agreement* is not adhesive if there is an opportunity to opt out of it." (emphasis added) (citation omitted)).[3]

---

[3] It is true that the court in *Simeon v. Domino's Pizza LLC*, No. 17-cv-5550, 2019 WL 7882143 (E.D.N.Y. Feb. 6, 2019), stated in that case that "dispute resolution by arbitration [was] not a mandatory condition of employment," *id.* at *5, and also stated that the employee "entered into [the] Arbitration Agreement . . . as a condition of his employment," *id.* at *4. But the court elsewhere described the employee as "mischaracteriz[ing] the nature of the Agreement as a 'mandatory arbitration provision' when it clearly is not." *Id.* at *1 n.2. The court thus understood that the opt-out ability meant the provision "clearly" was not "mandatory."

It is also irrelevant that these cases arose in a different legal context—dealing with unconscionability. They still stand for the proposition that an agreement with an opt-out ability cannot be considered a "required" agreement. If the agreement is not "required" in the unconscionability context, there is no basis to classify it as "required" when applying Rule 31(c) or the Minimum Standards. Petitioners cite no authority suggesting that the concept "required as a condition of employment" should be applied differently in these contexts.

Lastly, Petitioners fail to mention, much less defend, the district court's reliance on studies of consumer behavior that undergirded its view that the DRA was a "required agreement." *See* SPA20 (assuming Petitioners did not "read, let alone understand" the DRA). Nor could they. The district court's reasoning contravened basic principles of contract interpretation. *See Holcomb v. TWR Express, Inc.*, 11 A.D.3d 513, 514 (2d Dep't 2004) ("A party who executes a contract is presumed to know its contents and to assent to them." (citation omitted)). And its analogy to consumer contracts was at odds with the facts of this case—particularly given the bold print above the signature line reemphasizing the right to opt out. AA226; X Corp. Br. 38-39. The fact that Petitioners apparently

21

will not defend an important part of the district court's analysis under-scores the weakness of their position that Rule 31(c) and the Minimum Standards, rather than Rule 31(a) and DRA § 6, control.

## B. Requiring X Corp. to pay all ongoing fees conflicts with any reasonable reading of the DRA and JAMS rules.

The district court's requirement that X Corp. pay all ongoing fees also must be rejected because such an allocation conflicts with the par-ties' agreement. Applying Rule 31(c) and the Minimum Standards to the DRA would negate the specific terms of DRA § 6, contrary to basic con-tract interpretation principles. *See, e.g.*, *Brady v. Williams Cap. Grp., L.P.*, 928 N.E.2d 383, 386 (N.Y. 2010) ("[W]e agree with the lower courts that the terms of the parties' Arbitration Agreement, rather than the AAA rules, controlled" responsibility for payment of fees); *Bahoor*, 152 F. Supp. 3d at 1100 (holding that although "the parties agreed to operate under . . . JAMS rules[,] . . . any default fee provisions in the . . . JAMS rules are overridden by the express Agreement that the parties signed").

As the court in *Rosa* recognized, "Section 6 of the DRA must be given priority over any general terms" because it specifically addresses fees, in a standalone section of the agreement. 2024 WL 4903619, at *11. Petitioners suggest that the JAMS rules are more specific because they

22

are more detailed. Pet'rs Br. 30. Not so. Most of the JAMS provisions that Petitioners point to do not discuss fees at all, as explained above. And when the rules do discuss fees, they do so in general terms. In contrast, DRA § 6 provides specific rules governing fee sharing that draws a distinction in the fee allocation based on the requirements of applicable law and the decisions of the arbitrator. The DRA provides much more specific fee-allocation rules that application of Rule 31(c) and the Minimum Standards would improperly override. *Rosa*, 2024 WL 4903619, at *11.

Indeed, the only way to read DRA § 6 and the JAMS rules as a coherent whole is to recognize that the applicable rule is Rule 31(a), not Rule 31(c). The latter applies only when "an Arbitration is based on a clause or agreement that is required as a condition of employment," Rule 31(c), but in all other cases Rule 31(a) applies and provides that "unless the Parties have agreed to a different allocation, each Party shall pay its pro rata share of JAMS fees and expenses as set forth in the JAMS fee schedule," Rule 31(a). Because the DRA was not required as a condition of employment, the default "pro rata" apportionment applies. X Corp. pointed out Rule 31(a)'s default apportionment in its opening brief, X Corp. Br. 3, 11, 41, but Petitioners never address it. The DRA does modify

23

Rule 31(a)'s default apportionment in two respects: by requiring the company to pay where applicable law requires and by allowing the arbitrator to order a different allocation in accordance with applicable law. But otherwise the default pro rata allocation of Rule 31(a) governs, and neither Rule 31(c) nor the Minimum Standards ever enter the picture.

Petitioners mischaracterize X Corp. as arguing "that Section 6 of the DRA regarding fee apportionment requires a 50-50 split between an individual Petitioner and Twitter." Pet'rs Br. 42. That is incorrect. Consistent with Rule 31(a), DRA § 6 requires (unless applicable law requires X Corp. to pay all the fees) that the parties split the fees equally unless and until there is a different allocation by the arbitrator in an individual case. Equal fee sharing as the default is also supported by the definitions of "apportion" and "apportionment" as used in the DRA, which refer to division *proportionally*—for two parties, 50/50. *See* X Corp. Br. 40-41. Petitioners ignore the relevant portions of the most relevant definitions and leave out one definition entirely (*Black's Law Dictionary*). Instead they point to parts of the definitions that do not provide a metric for how to allocate. But X Corp.'s position is not that the term "apportionment" *always* requires a 50/50 split. "[T]he meaning of words depends on their

24

context." *Shell Oil Co. v. Iowa Dep't of Revenue*, 488 U.S. 19, 25 (1988). Here, when DRA § 6 and Rule 31(a) are read together, particularly in light of DRA § 6's distinction between cases where the company must pay all fees and those where it need not do so, "apportionment" is incompatible with automatically requiring the company to pay all ongoing arbitrator and arbitration fees in every case. Petitioners have no real response to the argument that interpreting "apportionment" in the second half of DRA § 6 to require X Corp. to bear all fees would conflict with the first half of DRA § 6, which requires X Corp. to bear all fees *only where applicable law requires it*. Petitioners likewise offer no other interpretation of DRA § 6 that gives meaning to all its terms.

The cases Petitioners cite for their reading of "apportionment" are off point. Those cases either did not interpret a term in an arbitration agreement, *see Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004); *Benedict P. Morelli & Assocs., P.C. v. Shainwald*, 49 A.D.3d 476, 476 (1st Dep't 2008), or did not consider what the default fee arrangement would be, as opposed to the final fee allocation. *See Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 932-33 (11th Cir. 2019); *see also Delano v. Mastec, Inc.*, No. 10-cv-320, 2010 WL

25

4809081, at *6 (M.D. Fla. Nov. 18, 2010) (finding agreement's statement that fees "will be apportioned between the parties by the Arbitrator" was not indicative of the "ultimate cost allocation" that "the Arbitrator" would decide).

Petitioners' remaining counterarguments do not hold water, either. First, Petitioners claim that Rule 31(c) and the Minimum Standards do not make DRA § 6 superfluous because they allow the employee to pay the filing fee. But that reading does not give effect to all the contractual language, because it takes away the arbitrator's contractual power to apportion "the Arbitrator's and/or arbitration fees" between the parties. AA225 (DRA § 6). The DRA does not say that the arbitrator will apportion the *filing fee*.

Second, echoing the district court, Petitioners claim that there is no superfluity because the Minimum Standards do not apply when an employee negotiated the agreement and was advised by counsel during negotiations. But because the DRA is a standardized agreement, this "exception" would never apply, and DRA § 6 would still not have the effect that its words require. Petitioners cannot square the minimal role they envision for DRA § 6 with any reasonable reading of its actual words.

Finally, Petitioners invoke the *contra proferentem* canon, arguing that the DRA must be read against X Corp. as its drafter. But that canon applies only when a contractual term is "ambiguous," *see, e.g.*, *Lilly v. City of New York*, 934 F.3d 222, 236-37 (2d Cir. 2019), and there is no ambiguity here. The DRA expressly requires apportionment when permitted by applicable law and requires all disputes to be resolved by the arbitrator.

Because applying Rule 31(c) and the Minimum Standards would improperly negate the DRA's specific fee provisions, the district court's order allocating all ongoing fees to X Corp. should be reversed.

## C. X Corp.'s arguments are properly before the Court.

Petitioners attempt to duck the merits entirely by contending that JAMS's fee decision is "not reviewable." Pet'rs Br. 32. This argument entirely ignores that Petitioners are the ones who came into court for an order requiring X Corp. to pay arbitration fees. X Corp. is not seeking judicial review of JAMS's determination in this case; it is simply arguing that the district court's order requiring X Corp. to comply with that determination was reversible error. If, as Petitioners claim, courts have no authority to evaluate whether JAMS's determination is "in accordance

27

with the terms of the agreement, 9 U.S.C. § 4, the district court would have no power to grant the relief *they* seek.

In any event, none of X Corp.'s arguments is precluded by any determination made by the JAMS General Counsel. X Corp.'s argument that Petitioners are not entitled to compel X Corp. to pay the entire arbitration fees—because the Petitioners' individual arbitrators have not made that apportionment—is a classic issue of "who decides" that courts frequently confront on motions to compel arbitration. *See, e.g.*, *Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 395 (2d Cir. 2018) ("[W]e are guided by the presumption that questions of arbitrability . . . are for a court to decide."). If X Corp. is correct that only the individual arbitrator has authority to resolve "any" fee dispute, neither JAMS nor the court has the authority to force X Corp. to pay fees. Similarly, Petitioners all but concede that if a 50/50 fee split applies to the parties as the default, the court has no authority to grant them the relief they request because such relief would conflict with the DRA. Pet'rs Br. 31.

Petitioners also err in seeking to sidestep X Corp.'s challenge to the application of the Minimum Standards. They contend that "parties cannot ask courts to find that an arbitration association was wrong about

28

their rules' meaning and application." Pet. Br. 33. But parties may challenge an arbitration association's reasoning with respect to its own rules when another party is attempting to turn that reasoning into a court order. Again, a court may compel arbitration only in accordance with the terms of the agreement—no matter how an arbitral organization interprets its own rules. And so, where a party, like Petitioners, is seeking to compel arbitration in a way that conflicts with those terms, the other side is allowed to point out the conflict even if doing so requires an evaluation of the arbitration rules. *See Lifescan*, 363 F.3d at 1012-13 (rejecting petitioner's interpretation of AAA rule in reversing an order requiring the respondent to pay fees); *see also Brown*, 2023 WL 8800728, at *2 (determining that arbitration was not had "in accordance with the terms of the agreement" because AAA did not comply with its rules' required termination process (quoting 9 U.S.C. § 3)).

None of the cases Petitioners cite support the contrary position. In *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 81, 84 (2002), the Court held that when a party seeks to compel arbitration, "'procedural questions which grow out of the dispute and bear on its final disposition'

are *presumptively* not for the judge, but for an arbitrator, to decide." (citation omitted)). But even if fees present a merely procedural issue, *Howsam* does not restrict X Corp.'s arguments because it is Petitioners who seek to use the DRA and FAA to compel arbitration. The same is true of *Dealer Computer Services, Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 888 (5th Cir. 2009). If anything, these cases support X Corp., which is the party arguing that the fee dispute is for the arbitrator to decide, while Petitioners erroneously conflate "the arbitrator" with JAMS.

Petitioners' other cited cases are also inapplicable. *Eliasieh v. Legally Mine, LLC*, No. 18-cv-3622, 2020 WL 1929244, at *3 (N.D. Cal. Apr. 21, 2020), *Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355, 1363 (11th Cir. 2023), and *Hernandez v. MicroBilt Corp.*, 88 F.4th 215, 220 (3d Cir. 2023), involved courts rejecting parties' interpretations of their agreements and the arbitration association rules incorporated in them on the merits, not courts denying parties' ability to argue that an arbitral association's determination was wrong. *Contra* Pet'rs Br. 29-30. Moreover, these cases came in a distinct procedural context where a party was seeking to lift a stay of litigation by arguing that the other was in breach of the arbitration agreement.

In *Eliasieh*, the court concluded that a party was in breach of its arbitration agreement when there was no provision in its agreement or the AAA rules (which the agreement incorporated) supporting its belief that the AAA's specific rules for consumer arbitrations were inapplicable. 2020 WL 1929244, at \*3. Similarly, in *Bedgood*, the court rejected a defendant's argument that the AAA should not have dismissed its arbitration with the plaintiff because the defendant could not show any contrary provision in its agreement. The court also rejected the defendant's argument that the AAA improperly determined that its agreement violated AAA rules, but it did so on the merits. *See Bedgood*, 88 F.4th at 1365 ("Because the Consumer Arbitration Rules don't draw the 'empirical'-'subjective' distinction that Resorts posits, we won't either."). Finally, in *Hernandez*, the court declined to review the AAA's application of its rules to allow a plaintiff to return to court after the AAA dismissed the arbitration—but it did so not because of a general view that such topics are off limits, as Petitioners contend, but rather because the "arbitration provision, including the AAA rules that it incorporates, [did] not condition her return to court on the AAA's decision being correct, or even reasonable." 88 F.4th at 220-21.

31

Nor do *Billie v. Coverall North America*, 594 F. Supp. 3d 479, 488-89 (D. Conn. 2022), *vacated and remanded*, No. 22-718, 2023 WL 2531396 (2d Cir. Mar. 15, 2023), or *Greco v. Uber Technologies, Inc.*, No. 20-cv-2698, 2020 WL 5628966, at *4 (N.D. Cal. Sept. 3, 2020), support Petitioners. *Billie* involved a motion by the plaintiff to lift a stay pending arbitration and *Greco* involved a motion to compel arbitration by a party whose dispute the AAA had declined to arbitrate. Moreover, in *Billie*, the district court reviewed the AAA determination at issue, while affording the AAA deference. *See* 594 F. Supp. 3d at 488-89. This Court, however, vacated that decision, affording no such deference and instead evaluating "the arbitration agreement's text" and "the AAA rules that it incorporates" for itself. 2023 WL 2531396, at *3. In *Greco*, it appears the defendant was trying to get the court to review the AAA's determination of substantive issues, not fees. *See* 2020 WL 5628966, at *4.

The court in *Ma* did, in dicta, state that it would defer to the JAMS General Counsel's determination and would not examine the meaning of the JAMS rules and Minimum Standards. But the court did not consider how it could have the authority to compel X Corp. to arbitrate other than in accordance with the DRA's terms. *See Ma*, 2025 WL 436636, at *4. In

32

fact, in discussing the DRA's terms regarding arbitration location, the court acknowledged that "[t]he parties' arbitration agreement . . . must be given effect." *Id.* at *10. The same principle applies to the parties' agreement over fee issues.

X Corp.'s arguments are properly before this Court and provide independent grounds for reversal. The DRA permits only the arbitrator to resolve a fee dispute. And there is no contractual support for compelling X Corp. to pay all ongoing fees, even on an "interim" basis.

## CONCLUSION

For these reasons and those in X Corp.'s opening brief, this Court should reverse the district court and deny the Petition.

Dated: February 20, 2025

MELISSA D. HILL
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000

Respectfully submitted,

/s/ Michael E. Kenneally
MICHAEL E. KENNEALLY
JAMES D. NELSON
BRENDAN J. ANDERSON
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000

*Counsel for Respondents-Appellants*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Local Rule 32.1(a)(4)(B) because it contains 6,996 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, Century Schoolbook 14-point font.

Dated: February 20, 2025          /s/ Michael E. Kenneally
                                  MICHAEL E. KENNEALLY
                                  *Counsel for Respondents-Appellants*